# CHARLESTON.

VAUGHAN CONSTRUCTION COMPANY v. VIRGINIAN RAILWAY
COMPANY.

Submitted April 21, 1921.   Decided May 11, 1920.

1.   CONTRACTS—*Decision of Arbitrator Under Contract Conclusive, in Absence of Fraud.*

Where a construction contract provides that the chief engineer shall be judge and arbitrator to settle doubts, disputes and differences arising between the parties, his decision and award thereon become final and conclusive on the parties unless successfully impeached for fraud, mistake or caprice on his part so gross as to amount to fraud on the rights of one or the other of the parties to the contract. (p. 445).

2.   SAME—*Decisions of Engineer, Acquiesced in Until Final Estimate, Conclusive on Contractor.*

Where during the execution of such contract, monthly estimates are made by the chief engineer of the work done in accordance with the interpretation put thereon by him, which are received and acquiesced in without objection, and payments made and received by the contractor, the latter will be estopped on final estimate and award of the chief engineer from putting a different construction on the contract and from impeaching such periodical or final estimates except for fraud, mistake or caprice amounting to fraud on his rights . (p. 445).

3.   SAME—*Verbal Modification of Written Contract Must be Established by Clear Proof; Where Dealings of Contractor and Engineer Conflict With Theory of Modified Contract, Contractor Cannot Recover More Than Contract Price.*

Where such contractor sets up a modification of the written contract by a verbal agreement between him and the chief engineer, and the written contract provides that no such modification can be made except it be done in writing, the authority of the engineer or the subsequent ratification of the modified contract by the owner must be established by clear and convincing proof; and if the subsequent dealings between the engineer and contractor have all been in conflict with the theory of such modified contract, and the final award and estimate of the engineer has been made in accordance with the written contract, the contractor will not be entitled to recover of the owner anything in excess of the prices stipulated in the contract for the different classes of work or material done or provided. (p. 445).

86 W. Va.

4.  SAME—*Written Construction Contract, as Construed by the Parties, Fixes Contract Price.*

> Where the facts are as assumed in the preceding points, the court may by peremptory instructions direct the jury to find for the defendant on all claims of the contractor not based on the provisions of the written contract and contrary to the interpretation put thereon by the parties and the chief engineer during the progress of the work.   (p. 451).

(LYNCH, JUDGE, absent).

Error to Circuit Court, Mercer County.

Action by the Vaughan Construction Company against the Virginian Railway Company.   Verdict for plaintiff, and from a judgment setting it aside, and granting defendant a new trial, plaintiff brings error.

*Affirmed.*

*R. L. Jordan, Ritz & Kee, A. G. Fox* and *Sanders & Crockett,* for plaintiff in error.

*Brown, Jackson & Knight, Williams, Loyall & Tunstall, Hall, Wingfield & Apperson,* and *McNutt, Ellett & McNutt,* for defendant in error.

MILLER, JUDGE:

A writ of error by plaintiff to the judgment below, pronounced on August 30, 1919, setting aside the verdict of the jury in its favor for $76,963.32, and the special findings of the jury in answer to special interrogatories submitted to them by the court, and granting defendant a new trial.

Plaintiff, the principal contractor, sued defendant in assumpsit, on the common counts, laying its damages at $125,000.00, the several items in the bill of particulars filed aggregating with interest added $101,403.43.   The first fourteen items of this account, aggregating $45,781.70, cover labor and work alleged to have been done and performed by Gist Brothers Company, subcontractors under plaintiff, in the work of double tracking and additional tracking of a portion of defendant's railroad through Wyoming County.   The remaining items of said account, pertaining to that part of the work done by plaintiff or another subcontractor, as follows:   (1) Balance allowed plaintiff by defend-

ant on final estimates by defendant's chief engineer, $15,663.56; (2) Amount of so-called "Force Account" analyzed in detail for work done by plaintiff not allotted to Gist Brothers Company, aggregating $18,906.16.

Besides the general issue pleaded defendant interposed a special plea in writing wherein it alleged that the work done and material furnished by plaintiff were done and performed under and pursuant to a contract with defendant, dated June 16, 1913, a contract in writing supplementary thereto, dated September 19, 1913, as modified by letter from defendant's chief engineer, dated October 14, 1913, thereby shown to the court and made a part of the plea, wherein it was provided that upon the final completion and acceptance of said work the chief engineer of defendant should issue a certificate over his signature, that the whole of the work provided for in said contract had been completed and been accepted by him under the terms and conditions thereof, and that thereupon the entire balance found due plaintiff should become due and payable to it at the office of the treasurer of the defendant within twenty days after the date of such certificate; *provided,* that if defendant should require it before making payment of the final balance, plaintiff should execute to defendant a release under seal of all claims or demands whatsoever in any manner arising out of said contract, and furnish satisfactory evidence, should it be required, that all bills against it that might in any way remain as liens against defendant for the payment of which plaintiff was liable under the terms of said contract had been fully paid; and *provided* further, that before payment of any estimate, monthly or final, defendant's chief engineer might require of plaintiff payment of all bills and accounts for all labor, material or supplies provided under the contract during the period covered by such estimate or at any time prior thereto, and also proper releases of all liens of laborers, material men, sub-contractors or others for work done or material or supplies furnished up to and including the term covered by' such estimate, and that defendant should have the right to apply any funds of plaintiff in its hands to the payment of all such liabilities of the contractor, which should be considered and accepted as payments on said contract. And the plea

further and finally avers that upon the completion of said work defendant's chief engineer made his final estimate and issued his certificate showing defendant still indebted to plaintiff in the sum of $15,663.56, which sum defendant was and is ready to pay over to plaintiff upon receiving the release of all claims of laborers, material men and sub-contractors as provided in said contract, as defendant and its chief engineer had required of plaintiff; but that plaintiff had utterly failed and refused to comply with these provisions of the contract; that plaintiff had sub-let a part of said contract to the firm of Gist Brothers Company, who had filed a mechanic's lien against defendant in Wyoming County on January 14, 1915, amounting to $79,959.02, which had not been released or discharged, but that on the contrary Gist Brothers Company had instituted in the circuit court of Wyoming County a suit against defendant to enforce said lien, which suit was still pending and undetermined in said court; wherefore it was averred that under the terms and conditions of said contract a release of said mechanic's lien constituted a condition precedent to any right on the part of plaintiff to maintain this action against defendant to recover the balance admitted to be due it or any other amount it might show itself entitled to receive under the terms of the contract, and that this suit ought to be quashed.

To this plea plaintiff interposed a special replication, averring that it was not altogether true that the work done and material furnished and sued for had been done and furnished pursuant to the written contract and supplemental contracts as averred in defendant's special plea; that in addition thereto said work had been done and material furnished pursuant to a further supplemental agreement entered into between plaintiff and defendant on the —— day of September, 1913, by which, in consideration that plaintiff at great expense had shipped onto the work ample equipment etc. required to perform and complete within the time stipulated the work contemplated under the original contract, and that changes in the plans had been made by defendant after the arrival of said equipment on the ground, whereby the amount of work remaining to be done would not be sufficient to reimburse plaintiff for the cost of making such preparation, it was agreed between

plaintiff and defendant's chief engineer that all the work to be done and performed east of East Elmore should be done and performed on the basis of what is described as "Force Account," on the basis of actual cost plus ten percent, and that it was upon this supplementary agreement as well as the contracts pleaded by defendant that said work was done and performed and labor and material furnished. And ·it is further averred that the work was done and final estimates prepared and accepted . by the chief engineer on November 10, 1914, and that all bills against plaintiff other than those for which defendant was primarily liable were paid, and that there were no liens remaining against defendant or its property other than such as it was personally liable for, and that if defendant would pay and discharge its obligations no liens whatever would remain against its property by reason of the work performed under said contract; that whatever remained due the Gist Brothers Company, and for which they had filed a mechanic's lien, was primarily the debt of defendant; that in departing from said original contracts in the classification of the work and material furnished thereunder and in making said final estimate defendant and its chief engineer had arbitrarily departed therefrom and had capriciously fixed an amount which did not in any case correctly represent the amount justly due as compensation therefor; wherefore it is averred plaintiff is entitled to maintain this suit.

Upon the issues joined on these pleas the case was tried to the jury with the result already indicated. In their response to the several interrogatories submitted, covering the work of the Gist Brothers Company, as to item number one, "Clearing E. Elmore to Mullens, $933.90"; Item number two, "Grubbing E. Elmore to Mullens, $140.13"; item number six, "Extra Bills 1 & 2, $1591.12"; item number nine, "Extra work on coal tipple at Elmore Yard, $3233.04"; and item number eleven, "Extra bill for resloping and finishing required by the Virginian Railway Company after same had been done according to engineer's instructions, $3429.87", the jury answered that they had found nothing in favor of plaintiff; but as to the other items of said Gist Brothers Company, they found for plaintiff as follows: on item number three, "Excavation East Elmore to Mullens, $8,594.02", the sum of $8,594.02; on item number

four, "6.4 miles of track laid, $906.79," the sum of $429.19; on item number five, "7050 Cu. Yd. Riprap, at $2.00 per Cu. Yd., $14,100.00", the sum of $14,100.00; on item number seven, "Extra work hauling material to make fills east of East Elmore, $5,209.00", the sum of $5,209.00; on item number eight, "Extra work in pulling down and removing slide beyond original slope stakes, Elmore Yard, $1,847.68", the sum of $1,847.68; and on item number ten, "Excessive deductions from estimates, $3,-298.15", the sum of $3,298.15. And in answer to the first of the two remaining items of said account, namely, balance on final estimate of the chief engineer, $15,663.56, the jury found for plaintiff the full amount thereof; and on the second thereof, namely, the "Force Account", $18,906.16, the jury found for plaintiff the sum of $12,306.16.

By instructions numbers two to thirteen inclusive, all of which except number six given were rejected on the trial, the defendant proposed to have the court tell the jury peremptorily to find for the defendant on each of the several items in said account relating to the work done and material furnished by said Gist Brothers Company. By the only instruction proposed by plaintiff, and given by the court, the jury were told that if they believed from the evidence in the case that the final estimate rendered by the chief engineer of defendant was so far inaccurate as to amount to fraud or bad faith, it does not bind the contracting parties. We do not think there was any evidence adduced before the jury justifying this theory of fraud or mistake on the part of the chief engineer, as we will endeavor to point out hereafter. And the court below in disposing of defendant's motion for a new trial, based in part on the court's refusal to give proper instructions in its behalf, evidently became satisfied that plaintiff had not proven a case entitling it to recovery at this time, for it set aside the verdict of the jury in its entirety and awarded defendant a new trial.

Section 30 of the original contract, among the numerous other provisions thereof, binding principal and sub-contractor alike, and relied on by defendant at the trial, provided as follows:

"To prevent any dispute, doubts, difference or litigations arising or happening, touching or concerning the work to be

done under this contract, or relating to the quantities, qualities, description, classification, manner or value of the work done and executed, or to be done and executed by the Contractor, or to the quantity, quality, classification or value of the material to be employed, or in respect of any additions, deductions, alterations, or deviations made, in, to, or from the said work, or any part of it, or touching or concerning the meaning or intention of the specifications and of this contract or any part thereof, or in any contract entered into by and between the Company and the Contractor pertaining to the work herein described, or of any plans, drawings, instructions or directions referred to in the specifications or the contract or which may be furnished or given during the progress of the work or touching or concerning any certificate, order or award which may have been or may be made by the Engineer, or in anywise whatsoever relating to the interests of the Company or of the Contractor in the premises, it is expressly agreed that every such question, doubt, dispute and difference shall from time to time be referred to and be settled and decided by the Chief Engineer, who shall be competent to enter upon the subject matter of such question, doubt, dispute or difference, with or without formal reference or any notice whatever to the parties to this contract, or either of them, and that he shall judge, decide, order and determine thereon; and that to the Chief Engineer shall also be referred the settlement of this contract and the determination of the sum or sums, or balance of money, to be paid or received by the Contractor from the Company, and it is further expressly agreed that such decision as to any and every question, doubt, dispute and difference, and said determination and estimate, or the quantities, qualities, classification and of the sums, values and all other matters hereinbefore or hereinafter mentioned and described shall be conclusive, final and binding on both parties hereto, and shall be a condition precedent to any right of the Contractor to receive, demand or claim any money or other compensation under this agreement, and a condition precedent to any liability on the part of the Company to the Contractor on account of this contract or for any labor or materials furnished in connection therewith."

The record shows that pursuant to the foregoing section of

the contract, every item covering the Gist Brothers Company work was, after completion thereof in November 1914, submitted to the chief engineer, not only by the sub-contractor, but by the plaintiff as principal contractor, and a full hearing was then had before him as arbitrator, which resulted in his award and final estimate of $15,663.56; and that thereafter and pending the suit of Gist Brothers Company against defendant, plaintiff made no objection to or complaint against said estimate, but on the contrary requested payment of said award, or the better portion thereof, and referred defendant to the bond it had executed as security and indemnity against the claim of the Gist Brothers Company.

We have decided, in accordance with the rule everywhere, that when a construction contract provides as does the one involved here that the chief engineer or architect shall be judge and arbitrator to settle doubts, disputes and differences arising between the parties, his decision and award thereon becomes final and conclusive on the parties, unless the same be impeached for fraud or mistake so gross as to amount to fraud. And this rule applies to the final estimate of such engineer or architect. *Sims v. Carpenter, Frazier & Co.*, 68 W. Va. 223; *Fuccy v. Coal & Coke Railway Company*, 75 W. Va. 134; *Vaughan Construction Company v. Virginian Railway Company*, 82 W. Va. 658. Plaintiff's only instruction to the jury recognized the law of these decisions and undertook to submit to the jury the fact of fraud or mistake on the part of the chief engineer, and if there had been any evidence justifying such finding, the instruction would have been proper and the finding of the jury thereon conclusive, but there was not.

Referring again briefly to the several items in the bill of particulars covering the work of Gist Brothers Company, upon which the jury found in favor of plaintiff, the first was based on the claim that the excavation east of East Elmore was properly measured by the capacity of the cars in which the material was hauled. The contract provided that it should be measured only as excavation, and plaintiff and Gist Brothers Company were requested by the chief engineer before making his final estimate and award to examine all measurements and consult the reports

and papers on file in his office or furnish any evidence showing any mistake or error therein, and gave them every opportunity to show any error therein. The second item, on which the jury found $429.19 in favor of plaintiff, related to the special contract performed by Gist Brothers Company in laying track. The contract called for $400.00 per mile for laying the ballasting with cinders. Gist Brothers Company laid all the tract, but ballasted only a part of it; and plaintiff was allowed by the engineer what he and his assistants considered a fair amount for the work actually done. The fact that defendant may have failed to provide the material for ballasting in time would not give plaintiff or its sub-contractor right to the full price, but to damage only, if any, for breach of that part of the contract. No such damages were alleged or proven. The third item was 7050 cubic feet of "riprap". The evidence shows that the material designated "riprap" in the account was allowed and estimated in the monthly estimates as unclassified excavation, which the contract stipulated was to be paid for at the rate of 39½ cents per cubic yard. Paragraph 72 of the specifications defined "riprap" to "consist of rough, durable stone, in general of size requiring two men to handle, deposited loosely, with crevices filled with spalls, and of such thickness as the engineer directs. If so required by the engineer, brush shall be used with the buts outward and downward in the stream." The evidence showed that the material covered by this item consisted of the stone taken from the excavation and distributed along the river promiscuously without any handling by hand or filling the crevices with spalls produced from the blasting or work of the steam shovels, and all of which material was classified by the chief engineer and estimated as unclassified excavation at the rate of 39½ cents per cubic yard as provided in the contract. And so with respect to every other item covered by the work of Gist Brothers Company, the contract by its plain terms, and as interpreted by the chief engineer, justified his monthly and final estimates, the classification of the work made by him, and his rejection of the claims made for extras; and the evidence furnishes no justification for the imputation of fraud, or mistake so gross, or conduct so arbitrary, as to amount to fraud on his part in his monthly or final estimates.

But if there could be any doubt about the construction and meaning of the contract with reference to these items or the estimates of the chief engineer, the acquiescence of the contractors therein by acceptance without question of such monthly estimates during the entire performance of the work conclude them from afterwards putting a different construction on the contract. *Sims* v. *Carpenter, Frazier & Co., supra.*

We have yet to dispose of the two remaining items of the account as found by the jury. The first of these needs no further consideration so far as the amount thereof is concerned. As already stated, it covers the amount of the final estimate, $15,-663.56. The only question presented as to this item is as to the right of the plaintiff to recover without first having satisfied or procured a release of the Gist Brothers Company claim involved in the pending suit. Certainly there can be no doubt about the right of the defendant to withhold this payment. The contract in express terms so provides. This is undoubtedly the correct view of the rights of the parties, unless the plaintiff's contention respecting the last item now to be considered be well founded on fact and law.

This last item, covering the so-called "Force Account", is based on plaintiff's theory of an alleged modification of the contract made with defendant's chief engineer in September 1913, due to the alleged change in the original plan of the work to be done after entering into the original contract, and the issue on which was presented by plaintiff's special replication to defendant's special plea. The only evidence offered by plaintiff in support of the supposed modified contract is that of John L. Vaughan. The chief engineer positively denies it. But if actually made, the defendant denies the authority of the chief engineer to so modify the written contract without its consent or approval, never given. The alleged consideration for the modification of said contract averred and sworn to by Vaughn was that the railway company, after plaintiff moved its equipment on the ground, so modified its plans as to eliminate or reduce a particular cut from about 65,000 yards to about 9,000 yards of excavation, thereby to deprive plaintiff of the most profitable part of the contract. The contract provides for such changes and modifications of the plans, and how the contractor is to be

compensated in such event. But the evidence shows that the letter addressed to plaintiff inviting bids was accompanied with a copy of the original plan of the railway and a profile map thereof, and the letter and the contract subsequently entered into call only for widening the slopes of the original plan, and using the material therefrom for double tracking as far as it would go, the balance of the material to be taken from the Elmore yards. Much reliance is placed on a letter received from the engineer on the ground to whom the contractor was referred by the chief engineer for information as to the work before submitting its bid. What is relied on in this letter especially is the statement that originally the railway company did contemplate reducing the particular cut in question, but found it impracticable and abandoned the proposition, and the writer wonders where the plaintiff got its impression that the cut would amount to 65,000 yards. The evidence shows that it was not until December 1914, after all the work had been done, and when the subject of final estimate was before the chief engineer, that plaintiff represented to him that it had lost on that section of the work $4,-284.60. Afterwards, in a letter to defendant's counsel, in September 1915, the amount had swelled to $12,906.16, and when the account or bill of particulars was filed with this suit, it had grown by certain accretions for rental of equipment, freight, cost of supervision, superintendence, etc. to $18,906.16. But conclusive of plaintiff's contention, we think, is the fact that during the entire progress of the work monthly estimates were made and furnished, and payments made to plaintiff on the basis of the contract price of 39½ cents per cubic yard. This yardage appears to have increased regularly from month to month. The estimates were received and accepted without question or objection by plaintiff. Moreover, the evidence shows that in February 1914 plaintiff presented to defendant some five different bills itemized as "Force Account", covering no part of the original work, but extras for taking out slides after the original work had been done, which were claims wholly inconsistent with the present contentions that the whole work was to be done upon the terms of the alleged modified contract pleaded in plaintiff's special replication. All these claims were before the chief engineer when he made his final estimate and

were disposed of in his final award, and we may here observe, as was done in disposing of the Gist Brothers Company items, that after this final estimate plaintiff acquiesced therein and actually asked for payment thereof.  The contract expressly provided that changes, except such as the contract provided for, should not be made except by agreement in writing, and the contractors thereby bound themselves that under no consideration would they make any claim or demand for extra compensation or for additional work except it should be provided for in the manner stipulated in the contract.  In our view of the evidence there is no just or reasonable basis for the plaintiff's claim of a modified contract.    The terms of the original contract are against it; every act and conduct of the plaintiff during the progress of the work repels the theory of such modified contract, and the verdict of the jury based thereon was properly set aside.

We have yet to dispose of defendant's cross-assignments of error.  In view of the new trial awarded some of these may present material questions.  The first relates to the ruling of the court on objection to certain of the testimony of Geo. W. Gist and John L. Vaughan, and later, the motion of defendant, overruled, to strike out the testimony of these witnesses, which was, (1) hearsay and not within their personal knowledge, (2) was based on records, measurements and calculations not made by the witness, and (3) such of it as was in conflict with the provisions of the contract between the parties.  Manifestly all the evidence of these witnesses in conflict with these general rules of evidence should have been excluded.  In disposing of the rulings of the court in respect to the several items of the account, we have, we think, sufficiently indicated an opinion on the competency of the evidence of these witnesses to guide the court on another trial without encumbering this opinion with a discussion of each of the items of evidence pointed out in the motion addressed to the circuit court.

The third cross-assignment is that the court should have given defendant's instructions numbered 1 to 15 inclusive.  Of these the court seems to have given number 6; as to the others we have already indicated the opinion that the court should have given as requested numbers 1 to 13, which includes num-

ber 6. telling the jury to find for the defendant on all the items of the account covering the work on the Gist Brothers Company. We have also decided that plaintiff on the evidence adduced was not entitled to recover anything on account of the last item of the bill of particulars, the so-called "Force Account." Instruction number 15 would have so told the jury. and should have been given. So with respect to instruction number 16; it would have propounded the law correctly respecting the item "riprap", and should have been given. Instead the court erroneously modified instruction number 26, relating to the same subject, and thereby left it to the jury to say, regardless of the honest judgment of the chief engineer, in interpreting the contract in relation thereto, whether in their opinion the dumping and depositing the stone along the bank of the river constituted "riprap". The contract left the interpretation of the contract to the chief engineer, and instructions numbers 10 and 26, as proposed by defendant, we think, correctly propounded the law to the jury, and should have been given as requested. Instruction number 17 relates to the same item as instruction number 9, a peremptory instruction, which we have already decided should have been given to the jury. If that had been given, number 17 would have been unncessary, although it correctly propounded the law of the case and might have been given without error. Instruction number 18, relating to the authority and right of the chief engineer under the contract to arbitrate disputes between the parties, correctly stated the law of the contract on this subject and should have been given without the court's modification thereof, which said: "However, the Chief Engineer's duty in this respect should be exercised reasonably and with due regard to the rights of both parties;" thus leaving it to the jury to say whether the engineer had exercised his duties reasonably or with due regard to the rights of the parties. His judgment was final and binding on the parties, as we have held, unless done fraudulently or capriciously or attended with mistake or error amounting to fraud on plaintiff. Instruction number 20, saying that the fact that the chief engineer and plaintiff may have arrived at the amount due plaintiff by different methods of calculation, constituted no evidence of bad faith or fraud on the part of

the engineer, stated a correct legal proposition, but as the contract defined and described the method of measurement, the instruction was inapplicable, and the subject was fully covered by other instructions requested. Instructions numbered 21, 22, 24, and 25 propounded correct legal propositions relating to the supposed changes in the original plan of the work, but in view of the practical construction put upon the contract by the parties during the progress of the work, and the peremptory instructions relating to the items involved, proposed and approved, if the peremptory instructions and those defining the authority and jurisdiction of the chief engineer as arbitrator should be given, these instructions would become wholly unnecessary. Instruction number 23, relating to the effect of the receipt by and acquiescence of the plaintiff in the monthly estimates, and the rendering of the extra bills in February 1914, for extra work done, and its request for payment of the final estimate, upon the plaintiff's right to recover the item $18,906.16, force account, while correct in law, would be immaterial if the peremptory instructions relating thereto should be given.     Instruction number 27 also affirmed the proposition that the final estimate of the chief engineer was binding on the parties unless it was the result of fraud or bad faith, or failure to exercise an honest judgment, or was so grossly inaccurate as to import bad faith. Instruction number 29 contains a like proposition relating to the estimate of the chief engineer applied to the amount of material actually hauled up Winding Gulf. Both instructions though good in law would be unnecessary if the principal instructions relating to the same subjects, approved, are given. Instruction number 30 is also good in law.   It would have submitted to the jury the proposition, based on plaintiff's theory of a modified contract, and covered by the alleged "Force Account", that notwithstanding the supposed promise of the chief engineer made after the work was begun by plaintiff, it would not be entitled to recover anything based on such promise. This instruction was based on the theory of want of authority in the chief engineer to change or modify the written contract except in the manner and form prescribed by the contract, that is, by memorandum in writing etc.     This instruction contained a good

legal proposition, but would be unnecessary in view of the other instructions, approved, if they were given.

Finding no reversible error in the judgment setting aside the verdice and awarding defendant a new trial, it must be affirmed.                                                    *Affirmed.*