F. E. TALLMAN *et al., etc. v.* A. M. CUNNINGHAM, *Trustee, et al.*

A. M. CUNNINGHAM, *Trustee, et al. v.* WM. T. GEORGE *et al.*

(No. 7109)

Submitted October 19, 1931.    Decided October 27, 1931.

232

*C. O. Strieby,* for appellants.
*Wm. T. George* and *S. T. Spears,* for appellees.

HATCHER, JUDGE:

On November 22, 1922, Wm. T. George executed a deed to Thomas W. Miller and A. M. Henderson granting all of his interest in two-thirds of a tract of 2500 acres known as the Joseph Hart lands in Randolph County, and assigning all money due him arising from the sale of this tract in the chancery cause of Rust Engineering Company v. Randolph Smokeless Coal Company, ''and all moneys arising out of the compromise heretofore made by the party of the first part herein with one H. W. Heedy.'' (The compromise related to this tract, and was made October 20, 1921.) The deed was placed of record November 23, 1922. This transaction was negotiated with George solely by A. M. Cunningham and was for the benefit' of himself and C. B. Cushwa as well as Miller and Henderson.

On June 30, 1923, George purported to assign (in writing) to the Citizens National Bank of Philippi as collateral for a loan (due in four months) all money due him from sale of the real estate in the above entitled chancery cause ''by reason of compromise between Wm. T. George and H. W. Heedy.'' George has not repaid the loan.

George's interest in the Heedy compromise was litigated in the above cause, during which the Bank filed its assignment from George, and which resulted in a decision in this Court on January 31, 1928, reported in 105 W. Va. 111, (which see for a comprehensive statement), decreeing to George, subject to the rights of the Bank, the excess above $18,000 due the Commercial Bank of Youngstown, Ohio arising from the sale of the said real estate.

While our mandate was being executed by the circuit court, to-wit, on December 20, 1928, Cunningham, Cushwa, Miller and Henderson (hereinafter called petitioners) set up in said cause their deed and assignment from George of November 22, 1922, and because of its priority over the later assignment in 1923 to the Bank of Philippi (hereinafter called the Bank) prayed that they be awarded the amount George was entitled to under the Heedy agreement, or that the instrument of November 22, 1922, be cancelled for failure of consideration, etc.

George and the Bank (hereinafter called respondents) answered that the petitioners were witnesses in the cause before its submission on the primary matter in controversy, and had then testified that the Heedy compromise did not contemplate any money should ever be paid to George; and that while not then parties to the suit, the petitioners knew the Bank was claiming therein whatever might be due George under the compromise; and that petitioners did not advance their demands under the deed of November 22, 1922, until after the final determination in 1928, in favor of George. The present controversy was submitted on the pleadings of the claimants to this fund and on the record before us in 1928. The circuit court found in favor of the respondents.

The evidence in that record fully supports the representations of respondents. Petitioners were cognizant from 1923 to 1928 that respondents were endeavoring to establish the fund in question, but petitioners maintained the position during that period that George was entitled to no money at all under the Heedy compromise. Letters from Cunningham to the Bank, written in 1925, even stated expressly that George had no contract of any kind or character with Heedy relating to the proceeds of the sale of the Randolph County lands. Both Cunningham and Henderson were lawyers and fully understood the priority of the assignment to them over the assignment to the Bank. Yet no where in their testimony did they refer to that priority, and none of the petitioners challenged the validity of the later assignment to the Bank, or indicated that they were claiming or would claim any money found to be due George under the Heedy compromise.

We see no equity in the demand of petitioners that this fund be handed over to them. By their own testimony they are not entitled to it. For the same reason their failure to acquire this fund cannot be treated as a failure of consideration in the deed of 1922. Besides, the law of estoppel does not require of them an affirmative renunciation of their right to the fund. The rule is well recognized that where a person advisedly remains inactive for a considerable time or by his conduct induces another to believe that he will not question a transaction and that other, relying on such attitude, incurs material expenses, such person is estopped from impeaching the transaction to the other's prejudice. 21 C. J., subject Estoppel, sec. 221; 10 R. C. L., subject, Estoppel, sec. 22; Herman on Estoppel and *Res Jud.*, secs. 776, 791, 1061 and 1063; *Mann* v. *Peck*, 45 W. Va. 18; *Champ* v. *County Court,* 72 W. Va. 475; *Drake* v. *O'Brien*, 99 W. Va. 582. Here, the petitioners with full information of their rights and of the matter in litigation, stood by for five years and by their conduct and testimony induced the Bank to believe that they were not claiming the fund at all, with no intimation that they would claim under their prior assignment as against it, and, relying on such attitude the Bank waged expensive litigation to recover upon its subsequent assignment. Accordingly, we hold that petitioners are estopped now to assert the priority of their assignment against the Bank, and affirm the circuit court.

*Affirmed.*