KANSAS CITY BRIDGE CO., Plaintiff, v. STATE OF SOUTH DAKOTA, Defendant.

(250 N. W. 343.)

(File No. 6370.   Opinion filed October 9, 1933.)

*Cherry, Davenport & Braithwaite,* of Sioux Falls, for Plaintiff.
*The Attorney General,* for the State.

RUDOLPH, P. J. This action was commenced under the provisions of section 2109, Rev. Code 1919, to recover on ten so-called "extra bills" claimed to be due the plaintiff arising out of the construction of the Wheeler Bridge across the Missouri river. The plaintiff filed its complaint, and thereafter certain other proceedings were had; but it is agreed by counsel that at this time the matter is before this court for the purpose of determining whether the complaint states a cause of action as to all or any of the separate "extra bills," upon which the complaint is based.

The complaint sets forth ten "extra bills," upon which recovery is sought. These "extra bills" are numbered 1 to 6, inclusive, and 9 to 12, inclusive. Extra bill No. 1 is based upon the following alleged facts: The contract for the construction of the Wheeler Bridge was awarded to the plaintiff by the highway commission of the state of South Dakota on October 13, 1923; at that time the plaintiff was ready, able, and desirous of immediately commencing the work of construction, but, because of the negligence and omission of the highway commission in failing to formally sign and execute the contract, and in failing to obtain the approval for the construction of said bridge by the Department of War, which was necessary, the plaintiff was delayed for a period of thirty-five days in commencing its operations in constructing the bridge. In connection with the bridge construction it was necessary that the plaintiff company build a temporary trestle or tramway out into the river. On March 15th, following the commencement of the work,

the ice in the Missouri river broke up, and this temporary trestle or tramway was destroyed by the action of the river, which caused the company a loss of $10,628.57. The complaint alleges that, had it not been for the delay of the state engineer and the state highway commission in executing the contract and securing the consent of the Secretary of War for the construction of the said bridge, the plaintiff would have had plenty of time to accomplish the work necessitating the temporary trestle or tramway, and could have removed the same from the river before the ice went out and destroyed it.

Extra bill No. 2 is based upon the following alleged facts, which are in the statement submitted to the highway commission as follows:

"Prior to the time when the ice went out March 5, 1924, the weather indicated that we might expect something like this to happen. We, therefore, sought the advice of the resident engineer as to what should be done with the steel cofferdam driven at Pier No. 3. The resident engineer advised us to leave the cofferdam, which we understood as relieving us from responsibility as to its safety."

"The ice, in going out, ruined the cofferdam, necessitating our rebuilding same."

It is sought to recover $3,546.42 on account of extra bill No. 2.

Extra bill No. 3 is based upon the following alleged facts: The state bridge engineer sent out a circular representing that gravel satisfactory for concrete to be used for the bridge could be obtained for a cost at the bridge of not to exceed $3.50 per cubic yard. We quote the following from the statements submitted by the plaintiff to the state highway commission covering this extra bill No. 3:

"Upon investigation it was decided that the material specified would not be satisfactory and we were forced to go to a point about five miles from the bridge and pick up granite boulders, install a crushing plant and crush this material for use in concrete."

"The crushing and hauling of the rock constituted a very large increase in the cost of this material. The nearest point where sand could be obtained was between 10 and 11 miles away and it was necessary for us to pay 30¢ per cubic yard for the sand, besides

our doing the stripping and hauling. This caused a large increase in the cost of sand material.

"These increases were all caused by misinformation received from the State Engineer's office."

It is sought to recover $8,327.21 on account of extra bill No. 3.

Extra bill No. 4 is based upon the following statement of facts, submitted by the plaintiff to the state highway commission: "The plan submitted to us on which we based our estimate showed that the cylinders would be landed on shale. Inside of the cylinder were to be driven, with a pile driver outfit, H beams. When this excavation was made it was discovered that rock was encountered instead of shale, and instead of driving the H beams it was necessary to excavate holes in the rock at a very large increase in cost to us." It is sought to recover $2,116.92 on account of extra bill No. 4.

Extra bill No. 5 is as follows: "Extra expense caused by having to make excavation in bottom of cylinders through rock instead of shale, as shown on plans. When cylinders were sunk to solid foundation it was discovered that rock existed instead of shale. It was impossible for us to sink the cylinders into this rock in such a way that the bottom would be sealed to prevent water from leaking in so that the cylinders could be pumped out, as we had planned to make excavation in shale." It is sought to recover $2,303.23 on account of extra bill No. 5.

Extra bill No. 6, as alleged in the complaint, and as submitted to the state highway commission by the plaintiff, is as follows:

"The soundings shown on plan at Pier No. 7 were not correct. It was necessary in sinking these tubes to do a very much larger amount of earth excavation than was anticipated.

"Agreement was made between our superintendent and the State Bridge Engineer that this extra material would be paid for by the State.

"Original elevation of shale was shown on plan as elevation 816.52. The actual elevation of shale (Niobrara) was found at elevation 811.71 and 812.36 for upstream and downstream tubes respectively, about four feet deeper than anticipated. We had difficulty in keeping out water and sand at this added depth. A great amount of material from outside the tubes came in under the tubes and had to be removed."

It is sought to recover $15,400 on account of extra bill No. 6.

Extra bill No. 9, as shown by the statements submitted to the highway commission, is as follows: "This claim is for the expense of constructing a temporary road built by this company before ground was frozen too hard for grading and in order to establish a camp and be ready to begin work as soon as right of way was secured." It is sought to recover $327.19 on account of extra bill No. 9.

Extra bill No. 10, as submitted to the highway commission, is as follows: "When it was found necessary to obtain the crushed rock at a point about five miles from the bridge, it became necessary for us to grade, drag and maintain a road, culverts and bridge between the rock crushing plant and the bridge site in order that the crushed rock could be hauled." It is sought to recover $1,211.10 on account of extra bill No. 10.

Extra bill No. 11 has been disposed of by the parties.

Extra bill No. 12 is based upon the alleged fact that the state withheld from the final estimate the sum of $2,662.29 for engineering expense incurred during the period after which it was stipulated in the contract the bridge should be completed, and the time when the bridge was finally completed and accepted.

The funds available for the payment for the Wheeler Bridge were raised under the provisions of chapter 128, Laws 1921. This law is as follows: "The Tax Commission is authorized and directed to levy annually a tax of one-tenth of a mill upon the assessed valuation of all taxable property in the State, to provide a special fund in the State Treasury to be known as the State Bridge Fund. All moneys received by the State Treasurer, pursuant to such levy, shall be placed in such fund and be used and expended for the construction and maintenance of State Bridges, in such manner as the legislature may hereafter direct." Under this law the fund known as the state bridge fund may be used and expended only for the construction and maintenance of state bridges.

The claims involved in extra bills Nos. 1 and 2 fall in the same category, and the inquiry arises, with respect to these claims, whether they are of such a nature that they may be paid from the state bridge fund, limited, as it is, to the payment for the

construction and maintenance of state bridges. The plaintiff has cited many cases wherein different political subdivisions have been held liable for claims of a similar nature to those involved in extra bills Nos. 1 and 2. A review of those cases would not be helpful unless this court is inclined to depart from the rule established in Sigwald v. State, 50 S. D. 37, 208 N. W. 162, 163, and the court is not so inclined. We believe there is no valid distinction between the claims involved in these two extra bills, and the claim considered in the Sigwald Case. The purpose for which the funds, here sought to be reached, are available, is that of construction and maintenance of state bridges. In the Sigwald Case the funds sought to be reached were available "only in the laying out, marking, construction, or reconstruction of public highways." No material distinction therefore appears as to availability of the funds sought to be reached in this case and in the Sigwald Case. In that case it was assumed without deciding that it was an action for damages for breach of contract, and we make the same assumption in this case, so far as extra bills Nos. 1 and 2 are concerned. The plaintiff urgently maintains that the nature of claim here involved differs so materially from the claim involved in the Sigwald Case that a different rule should apply. We do not agree. In that case it was sought to recover damages because of prospective profits lost by the plaintiff, due to the contract being breached by the state. In this case it is sought to recover damages in extra bills Nos. 1 and 2, because of the loss of the tramway and cofferdam being destroyed by the river, due to the contract being breached by the state. Under the assumption made in both cases, i. e., that both claims are claims for damages for breach of contract, we see no valid distinction between the two sets of facts under the rule announced in the Sigwald Case. After referring to the highway appropriation, wherein it was provided that the fund there sought to be reached "shall be expended, only in the laying out, marking, construction, or reconstruction of public highways," the court in the Sigwald Case said:

"In the language of the constitutional provision, is the above 'an appropriation for the specific purpose' of paying damages arising from the breach of a contract caused by the highway commission? The word 'specific' compels a negative answer to the question whatever the answer might be were it not for that word." We conclude that there is shown no "specific" appropriation for the

payment of the damages which plaintiff seeks to recover for the breach of contract alleged in extra bills Nos. 1 and 2, and no cause of action is stated with reference thereto.

Extra bills Nos. 3, 9, and 10 constitute claims for alleged extra work. There is no allegation or contention that this work was done on a "force account" basis. Recovery therefor is sought upon the theory that it was extra work not included in the contract. "Extra work," as that term is used in connection with construction contracts, "means work done not required in the performance of the contract; something done or furnished in addition to, or in excess of, the requirements of the contract." McQuillin on Municipal Corporations (2d Ed.) § 2093. The specifications for this work were expressly made a part of the contract, and section 42 thereof provides as follows: "Extra Work. The Contractor shall perform extra work, for which there is no quantity and price included in the contract, whenever, to complete fully the work as contemplated, it is deemed necessary or desirable, and such extra work shall be done in accordance with the specifications therefor, or in the best workmanlike manner as directed. This extra work will be paid for at a unit price or lump sum to be agreed upon previously in writing by the Contractor and the Commission, or where such a price or sum cannot be agreed upon by both parties, or where this method of payment is impracticable, the Commission may order the Contractor to do such work on a 'Force Account' basis." There is no contention or claim that any of this extra work was agreed upon in writing by the contractor and the commission prior to the execution thereof. The stipulation in construction contracts that compensation for extra work should be agreed upon prior to the performance of the work is not an unusual provision in this class of contracts. The reason therefor, no doubt, arises because of the frequent claims made by contractors for this so-called extra work. "Municipal Corporations have so frequently been defrauded by exorbitant claims for extra work under contracts for public improvements that it has become usual to insert in contracts a provision that the contractor shall not be entitled to compensation for extra work unless it has been ordered in a particular manner." 19 R. C. L. 1077, § 362. Mr. Justice Clarke, in the Wells Brothers Case, 254 U. S. 83, 41 S. Ct. 34, 35, 65 L. Ed. 148, said: "Men who take $1,000,000 contracts for government buildings are neither

unsophisticated nor careless." We think that statement applies to this present situation. Contractors engaged in the nature of the work here performed are neither "unsophisticated nor careless." It would have been a simple matter for the plaintiff to have agreed in writing with the commission for this extra work prior to the performance thereof. This provision of the contract is not an unreasonable provision, and we know of no reason why it should not be given effect. This court in the recently decided case of England v. State, 61 S.D. 132, 246 N.W. 628, gave effect to a similar provision in the contract involved in that case. See, also, City of Huntington v. Force, 152 Ind. 368, 53 N. E. 443; Watterson v. Mayor, etc., of Nashville, 106 Tenn. 410, 61 S. W. 782; Dolman v. Board of Com'rs of Kingman County, 116 Kan. 201, 226 P. 240; O'Leary v. Board of Port Com'rs for Port of New Orleans, 150 La. 649, 91 So. 139; Orpheum Theater Co. v. Kansas City Co. (Mo. Sup.) 239 S. W. 841; Hoskins v. Powder L. & I. Co., 90 Or. 217, 176 P. 124; City of Salisbury v. Lynch-McDonald Const. Co. (Mo. App.) 261 S. W. 356; Kinney v. Mass. B. & Ins. Co. (Sup.) 175 N. Y. S. 398; Vaughan Const. Co. v. Virginian Ry. Co., 86 W. Va. 440, 103 S. E. 293. We quote a pertinent paragraph from the case of Plumley v. U. S., 226 U. S. 545, 33 S. Ct. 139, 140, 57 L. Ed. 342: "The other items for extra work were properly disallowed. The contract provided that changes increasing or diminishing the cost must be agreed on in writing by the contractor and the architect, with a statement of the price of the substituted material and work. Additional precautions were required if the cost exceeded $500. In every instance it was necessary that the change should be approved by the Secretary. There was a total failure to comply with these provisions, and though it may be a hard case, since the court found that the work was in fact extra and of considerable value, yet Plumley cannot recover for that which, though, extra, was not ordered by the officer and in the manner required by the contract."

There is another significant fact disclosed by the pleadings in this case. The complaint discloses that, from time to time during the progress of the work, estimates were made by the state bridge engineer upon which monthly payments were made to the contractor. Section 6 of chapter 204, Laws of 1923, which provides for the construction of the Wheeler Bridge, includes the following: "All contracts shall provide for payment as the work progresses,

upon estimates of the State Bridge Engineer or other engineer employed by the Commission, but at all times there shall be withheld not less than twenty per cent of the contract price of the work estimated to be completed at any time when payments are made thereon and the work accepted by the State Highway Commission." This provision of the law is incorporated in the specifications under paragraph 80 and, as disclosed by the complaint, was complied with. It is significant, we believe, that none of these claims for extras were at any time included in the estimates during the progress of the work. All of the work upon which the claims for extras are based arose during the progress of the work, and some of them at the very inception of the work. No claim was made for these extras until the final estimate was submitted. In the case of Bates & Rogers Construction Co. v. U. S., 56 Ct. Cl. 49, which was a case wherein it was sought to recover for extra work under a construction contract, monthly estimates had been paid and accepted and no claim made for extras until the final estimate; the court said: "If the plaintiff did work which he did not contract to do it is too late to assert the fact after receiving payments based upon contract prices without objection or protest, and without an observance of positive provisions of the contract. Plumley Case, 226 U. S. 545, 547 [33 S. Ct. 139, 57 L. Ed. 342] ; Wells Brothers case, 254 U. S. 83 [41 S. Ct. 34, 65 L. Ed. 148] ; Gleason Case, 175 U. S. 588, 602 [20 S. Ct. 228, 44 L. Ed. 284]."

Without deciding that the conduct in this case of accepting payment of monthly estimates, and making no claim for these extras until the final estimate was made, would be decisive if the claims were supported by the contract, it is, nevertheless, clear that this action affords a means of determining that the intention of the parties in entering into the contract was to give effect to the unambiguous terms contained in section 42 of the specifications, above set out.

The plaintiff contends that the facts alleged show a waiver of the stipulation that extra work should be provided for in writing. It is not necessary to decide in this case whether or not the highway commission could waive this provision. The facts alleged, and which are sought to be alleged by way of amendment to the complaint, disclose that the acts upon which it is sought to predicate a waiver were acts of the state highway engineer. The

acts of the engineer could not waive that provision of the contract which requires that the price to be paid for extra work must be "agreed upon previously in writing by the contractor and the commission." It is very generally held that, under construction contracts which provide that the architect or engineer may authorize extra work in writing, no authority is thereby given to the engineer or architect to waive this provision, and that under such contracts the contractor shall not be entitled to any compensation for extra work unless the engineer or architect. gives a written order therefor. Langley v. Rouss, 185 N. Y. 201, 77 N. E. 1168, 7 Ann. Cas. 210, and note page 213. In this case, had the contract provided that the agreement for extra work should be between the contractor and the engineer, the engineer could not by his acts waive this provision and bind the commission. Certainly then, when the contract provides that the agreement for extra work must be between the contractor and the commission, the engineer cannot by his acts waive that provision and thereby bind the commission. To hold that the engineer could by his acts waive this express provision of the contract would be to extend the authority of the engineer far beyond anything given him in the contract, and override that express provision of the contract reserving to the commission the power to stipulate for extra work. We conclude that no cause of action is stated in extra bills Nos. 3, 9, or 10.

Extra bills Nos. 4, 5, and 6 present a somewhat different situation than that involved in extra bills Nos. 3, 9, and 10. Attached to the contract is a letter written by the plaintiff addressed to the South Dakota State Highway Commission, as follows:

"Pierre, S. D., Oct. 10, 1923.

"South Dakota State Highway Comm.

"Pierre, South Dakota

"Gentlemen:

"Regarding items 5 and 38 of proposal Rock and Structure excavation, should it be found necessary to go a greater depth than three feet below elevations shown on plans for foundations, we will expect to do the additional work on a force account basis as provided in Specifications Pages 7 & 8, Item 43.

"Trusting this explanation of our proposal meets with your approval, we are          "Yours truly

"Kansas City Bridge Co.
"W. D. Glasscook, Agent."

The contract provides for furnishing all material and labor by the plaintiff "all as per plans and specifications furnished by the South Dakota Highway Commission and supplementary letters that are hereto attached." The above-quoted letter was attached as a "supplementary" letter and thereby became a part of the contract. While it is not definitely alleged in the complaint that the work covered by extra bills Nos. 4, 5, and 6 comes within the meaning and contemplation of the above letter attached to the contract, nevertheless, from a reading of the complaint as a whole we have concluded that there is sufficient in the complaint to amount to an allegation that the work performed under extra bills Nos. 4, 5, and 6 comes within the meaning and contemplation of this letter. Whether the work performed under extra bills Nos. 4, 5, and 6 does in fact come within the meaning of the contract including this supplementary letter, we believe, must be determined (as a matter of proof as distinguished from pleading) by extrinsic evidence. Should it be proved that the work performed under extra bills Nos. 4, 5, and 6 comes within the meaning of the contract and this supplementary letter, the plaintiff would then be entitled to recover for such work as was performed under these extra bills according to the terms of the contract including the letter. Should plaintiff fail to prove that the work performed under extra bills Nos. 4, 5, and 6 was within the meaning and contemplation of the contract and letter, then this work would be nothing other than extra work, and what has been said with regard to extra bills Nos. 3, 9, and 10 would govern as to the disposition of these claims.

■ Under extra bill No. 12 it is sought to recover money withheld in the final estimate for engineering expenses incurred during the period after which it was stipulated in the contract the bridge should be completed, and the time when the bridge was finally completed and accepted. The complaint alleges that the delays in the final completion of the said contract on the part of the plaintiff were wholly due to the acts, negligence, and omissions on the part of the defendant. The specifications, in paragraphs 75 and 76 thereof, provide as follows:

"75. Provisions for Time Allowance for Completion of Work. The Contractor shall not be entitled to any claim for damages for

any hindrance or delay in the progress of the work, or any portion thereof, by reason of high water, strikes, accidents in construction, failure of the railways to transport materials, or other causes beyond his control, but such hindrance will entitle the Contractor to an extension of time for completing the work sufficient to compensate for such necessary or unavoidable hindrance or delay. If the satisfactory execution and completion of the contract shall require work or material in greater amounts or quantities than those set forth in the contract, then the contract time for completion shall be increased in the same ratio as the additional work bears to the original work contracted for. The Engineer shall keep a record of all necessary or unavoidable delays, or of increase in the amount of quantity of work, which may entitle the contractor to any extension of time for completion of the work, and shall report the same in writing to the Commission and furnish the Contractor a copy thereof. All extensions of the contract time of completion shall be granted by the Commission but no allowance will be made for delays or suspensions of the prosecution of the work due to the fault of the Contractor.

"76. Failure to Complete the Work on Time. Should the Contractor fail to complete the work within the time agreed upon or within such extra time as may have been allowed by formal extensions granted by the Commission, there shall be deducted from any moneys or amounts due or coming due the Contractor, an amount equal to the cost of maintaining the Engineer, or Engineers, assistants and inspectors on the work from and after the contract time of completion as agreed upon or extended by formal action of the Commission until the work is actually completed and accepted, and this amount shall be considered as a reasonable liquidated damage due the State by the Contractor by reason of his failure to complete the work within the time agreed upon or as formerly extended."

It is the contention of the defendant that, even though the delay was caused by the acts of the defendant, nevertheless the defendant can withhold the stipulated damages provided for in the specifications, if no formal extension of time has been granted by the commission. We do not believe this is a reasonable construction of these provisions of the specifications. It is very generally held under similar provisions in construction contracts that, where

the public body is at fault for delays, it cannot hold the contractor liable for the amount of stipulated damages for any delays which have been due to its fault, or to the fault of persons for whose conduct the public body is responsible. Donnelly, Law of Public Contracts, § 283. In the case of Wallis et al v. Inhabitants of Wenham, 204 Mass. 83, 90 N. E. 396, 17 Ann. Cas. 644, a contract for the construction of public works, with provisions almost identical with those of the specifications herein set out, was considered by the Massachusetts court, and it was there held that the owner could not hold the contractor liable for stipulated damages for any delays due to the owner's fault, or that of persons for whose conduct he is responsible. We believe the construction of that contract by the Massachusetts court to be a reasonable construction of the provisions of the specifications above referred to. The delays contemplated by the specifications were delays other than those of the contracting parties, and which were beyond the control of the contractor. There certainly is no express provision in the specifications that the state should withhold any amount as stipulated damages to cover the delay caused by its own acts. Without any such express provision we are not inclined, by implication, to insert therein any such harsh feature. We conclude, therefore, that the state would not be entitled to withhold stipulated damages to the extent that the state, or the persons for whose conduct the state was responsible, caused the delay. The complaint alleging that the entire delay was caused by the acts of the state, it follows that a fact issue was raised with reference to extra bill No. 12.

The procedure to be followed to have the issues of fact determined will be provided by future order of this court.

All the Judges concur.

ROBERTS, J., disqualified and not sitting.