EARL J. HAGER *and* JULIA A. HAGER

*v.*

EXXON CORPORATION

(No. 13753)

Decided March 7, 1978.

*Bowles, McDavid, Graff & Love, Paul N. Bowles and J. Thomas Lane* for appellant.

*David W. Knight* for appellees.

CAPLAN, CHIEF JUSTICE:

This is an appeal from a final order of the Circuit Court of Mercer County wherein that court declared a certain lease and supplements thereto null and void. Upon the refusal of the court to grant a motion for a new trial, this appeal was prosecuted.

Earl J. Hager and Julia A. Hager, his wife, plaintiffs below, are the owners of certain land in Mercer County which they have leased to the defendants, Exxon Corporation, since 1952. Exxon subleases this property to a

dealer who operates an Exxon service station on the premises. On September 13, 1952 the parties entered into their original lease agreement under the terms of which the plaintiffs agreed to build a service station and Exxon's predecessor, Esso Standard Oil Company, agreed to lease said station for a period of fifteen years. This lease was cancelled by mutual agreement when, on September 12, 1953, these parties entered into a master lease, the subject of this controversy.

The 1953 lease provided for a twenty-year term with the right of the lessee, Esso Standard Oil Company, to renew as follows:

> Lessee shall have the option of renewing this lease for Ten (10) additional periods of one (1) year each, the first of such periods to begin on the expiration of the original term herein granted, and each successive period to begin on the expiration of the period then in effect, upon the same terms and conditions as herein set forth and all of said privileges of renewal shall be considered as having been exercised unless Lessee gives Lessor notice in writing at least thirty (30) days prior to the expiration of the period then in effect of its intention not to exercise such renewal privilege.

On May 24, 1954, the parties entered into a supplemental agreement which amended the description of the leased premises to conform to a then recent survey. On August 20, 1958, by another supplemental agreement the rental for the leased premises was changed from $1,500.00 per year, plus one cent per gallon of gasoline sold in excess of 150,000 gallons per year, to a flat annual rental of $2,700.00. A further agreement was entered into between the parties on December 12, 1958 nereby Exxon obtained a first refusal option to purchase the land upon which the service station was situate.

Another supplemental agreement was executed by the parties by which Exxon obtained the privilege of renewing the lease for ten additional periods of one year each, in return for which Exxon agreed to erect a storage

room on the premises. On August 17, 1965 these parties entered into their final supplemental agreement. Thereunder, Exxon was given the right to renew the lease for an additional ten one-year periods beginning on March 15, 1994. In consideration therefore, Exxon agreed to construct an additional service bay and assumed the responsibility of painting the building.

In each of the above supplemental agreements the parties specifically ratified and confirmed the 1953 lease, as demonstrated by the following language in the last supplemental agreement:

> [S]aid original lease agreement, as heretofore supplemented and amended, is hereby confirmed and shall remain in full force and effect according to its terms and provisions.

Thus, the agreement entered into in 1953, as supplemented and ratified, provides for a twenty-year rental period from March 14, 1954 to March 15, 1974, with the right to renew for thirty additional one-year periods. Exxon has leased the premises since March 15, 1974 pursuant to its renewal options.

On August 25, 1975 the plaintiffs filed their complaint wherein they set out some of the terms of the 1953 lease and the supplemental agreements. They alleged therein that under the renewal privileges in the lease and the supplements thereto said lease was extended "to March 15, 2004, on the same terms and conditions as the original lease of September 12, 1953." It is pertinent to note, however, that the complaint acknowledges that the rental provision was amended by the supplemental agreement of August 20, 1958.

The plaintiffs further complained that the defendant had the right to cancel the lease upon written notice to the plaintiffs at least thirty days prior to the expiration of the period of one-year renewal of its desire to cancel; also, that the plaintiffs have no right to negotiate the amount of the rents nor do they have the right under the terms of the lease to cancel as does the defendant.

In their complaint the plaintiffs quote Paragragh 15 of the lease which reads: "If Lessee holds over the premises herein described beyond the termination of the term herein created, or any extension thereof, or any renewal of this lease pursuant to the terms hereof, without having first renewed or extended this lease by written agreement, such holding over shall not be considered as a renewal or extension of this lease except on a month-to-month basis." They then allege that there have been no written agreements with reference to renewal or extension of this lease during the periods of the year-to-year renewals.

This lease has been extended on three occasions and on each occasion the extension has been by written agreement. Each supplemental agreement extending the lease contained specific provisions that, within such extension, consisting of ten one-year periods, the renewal shall be considered as having been exercised unless the lessee give notice in writing at least thirty days prior to the expiration of the period then in effect of its intention not to renew.

The plaintiffs then asked that the lease be declared null and void as unconscionable and against public policy. In the alternative, they ask that the lease be declared to be a month-to-month tenancy and that the defendant be required to vacate the property.

The defendant filed its answer and subsequently filed a motion for summary judgment. The court set this matter for trial and thereafter, on January 13, 1976, entered an order overruling the defendant's motion for summary judgment. The trial court further held in that order that: (1) the lease of September 12, 1953 was never a binding lease between the parties because it is not shown therein that the person executing the lease was authorized to act for Exxon; (2) there were never any extensions of the main lease; (3) any provisions for renewals or extensions "arose through mutual mistake and/or were obtained by misrepresentations and fraud on the part of the defendant corporation"; and, (4) the "leases between the parties are unconscionable and

unfair". The court held that the leases and options were null and void and that the defendant is a month to month tenant.

The defendant assigns the following errors:

(1) Since there was no allegation in the Complaint of fraud, misrepresentation, undue influence, mistake, improper acknowledgment or lack of consideration, these matters should not have been considered by the court, and it was error for the court to base its final judgment on them.

(2) Even if there was fraud, misrepresentation, or a mistake in negotiating the 1953 lease, the parties subsequently ratified and confirmed that lease in five subsequent agreements, and for this reason it was error for the lower court to base its final judgment upon a finding of fraud or mistake.

(3) It was error for the court to conclude that the 1953 lease agreement was unenforceable because the signature of the Exxon agent was not properly acknowledged.

(4) Since there was absolutely no proof as to a "mutual" mistake, it was error for the court to declare the 1953 lease agreement voidable for this reason.

(5) There was absolutely no proof as to the basic unfairness of the lease agreements which would support the finding of unconscionability according to the principles stated by the court.

(6) The lower court erred in refusing to grant defendant's motion for a new trial on the basis of newly discovered evidence.

Although numerous errors are assigned, the assignment designated (1), above, is dispositive of this appeal and requires a reversal of the judgment of the trial court. That court held the lease and the extensions thereto null and void as having been obtained through mutual mistake and/or misrepresentations and fraud on the part of the defendant. The plaintiffs having failed to plead fraud or mistake could not rely thereon and it was reversible error for the court to have so ruled.

It has long been held in this jurisdiction that to establish fraud, it must be clearly alleged and proved. *Ghiz v. Savas,* 134 W.Va. 550, 60 S.E.2d 290 (1950). *See also, Zogg v. Hedges,* 126 W.Va. 523, 29 S.E.2d 781 (1944); *LaFollette v. Croft,* 122 W.Va. 727, 14 S.E.2d 917 (1940); and *Hunt v. Hunt,* Trustee, 91 W.Va. 685, 114 S.E. 283 (1922).

Any doubt in relation thereto has been laid to rest by the language of Rule 9(b) of the West Virginia Rules of Civil Procedure, the pertinent part of which reads: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Not only must fraud or mistake be pleaded, the circumstances creating the fraud or mistake must be set out in the pleadings with particularity. The charge of fraud is of such gravity that the strict requirements of Rule 9(b), R.C.P., have been included in the procedural rules as an exception to the principles of brevity and simplicity in pleading called for in Rule 8(e)(1). The rationale for these requirements is to permit the party charged with fraud the opportunity to prepare a defense.

In the instant case the plaintiffs not only failed to plead the circumstances constituting fraud or mistake, they did not even allege fraud or mistake in their complaint. When, during the trial, the plaintiffs undertook to prove fraud, the defendant, not being prepared to defend on that charge, requested the court to require the complaint to be amended accordingly. The court refused, proceeded to hear the case and decided it on the basis of fraud and misrepresentations on the part of the defendant.

The defendant, having been surprised by the proffered proof of fraud, mutual mistake and misrepresentations, requested the court, on his motion for a new trial to permit him to present a witness who could offer a defense to these charges which had not been pleaded. He noted that he had not been prepared to present this witness during the trial for obvious reason that he had not been informed by the pleadings that evidence of

such charges would be produced. Such evidence by the witness offered by the defendant could be pertinent to other matters in this case, and, in the then posture of the case, should have been allowed.

It was further error for the trial court to hold that there "was never a binding lease between the parties" because it was not shown therein that the person executing the lease was authorized to act for Exxon. These parties operated under and accepted the provision of this lease for a period in excess of twenty years.

During that period the lease was amended several times by supplemental agreements entered into by the parties. In each of these supplements the provisions of the lease were ratified. In these circumstances the plaintiffs are estopped from denying the validity of the lease. "The doctrine of equitable estoppel or estoppel in pais is frequently applied to transactions in which it would be unconscionable to permit a person to maintain a position inconsistent with one in which he, or those by whose acts he is bound, has acquiesced." 28 Am. Jur. 2d, *Estoppel and Waiver*, Sec. 57. *Tallman v. Cunningham*, 111 W.Va. 231, 161 S.E. 22 (1931); *Drake v. O'Brien*, 99 W. Va. 582, 130 S.E. 276 (1925); *Vaughan Const. Co. v. Virginia Ry. Co.*, 86 W.Va. 440, 103 S.E. 293 (1920); *Werninger v. City of Huntington*, 78 W.Va. 107, 88 S.E. 655 (1916); *Mann v. Peck*, 45 W.Va. 18, 30 S.E. 206 (1898).

In addition to clear acquiescence by the plaintiffs, they are also estopped on the basis of delay, silence and inaction. 28 Am. Jur. 2d, *Estoppel and Waiver*, Sec. 58. Although the plaintiffs did not have the advantage of advanced formal education, it appears from the record that they were not unlearned in real estate transactions of this sort. Certainly, after all these years, they could have no doubt as to with whom they were dealing; certainly, they suffered no disadvantage on this ground.

Inasmuch as this case is herein remanded for a new trial, the courts ruling of unconscionability will not be considered on this appeal. This matter can be deter-

mined only after both parties have had an opportunity to present evidence in relation thereto.

The judgment of the Circuit Court of Mercer County is reversed and the case is remanded for a new trial.

Justice McGraw dissents and would affirm the judgment of the trial court.

*Reversed and remanded.*