ANTHONY MIRABELLI, Doing Business as GRANDVIEW NURSERIES, Appellant, *v.* CITY OF NEW YORK, Respondent, Appellant, Impleaded with NEW YORK WORLD'S FAIR 1939 INCORPORATED, Respondent.

First Department, May 29, 1941.

*Frank H. Connelly, Jr.,* of counsel [*Toomey, Edwards & Connelly,* attorneys], for the appellant.

*Charles F. Murphy* of counsel [*Paxton Blair* with him on the brief; *William C. Chanler, Corporation Counsel*], for the respondent-appellant.

*William B. Davis* of counsel [*James E. Turner,* attorney], for the respondent New York World's Fair 1939 Incorporated.

GLENNON, J.    Plaintiff, on December 22, 1937, entered into a written contract with the New York city park department to landscape a section of the Grand Central Parkway extending from the Long Island Railroad bridge cross-over to a point at the southerly end now known as World's Fair Boulevard and Grand Central Parkway.   The work included, among other things, the sowing of grass seed on the center island which divided the two strips of the concrete roadway, and also the seeding and planting of shrubbery on the two wide flanks of the parkway.   The

defendant New York World's Fair 1939 Incorporated, leased property for fair purposes from the city of New York on both sides of the parkway. Wire fences, five feet in height, were erected at the edges of the easterly and westerly flanks of the parkway to inclose the property to be used by the World's Fair under its leasehold.

There was no public entrance to the fair grounds along the entire distance covered by plaintiff's contract. There was a gate in the fence slightly to the north of the Administration Building. Formerly a road led from the fair grounds through this gate to the parkway. However, when plaintiff entered into the performance of his contract, the gate was closed and padlocked and the portion of the road which extended from the fence to the parkway was dug up, filled in and seeded. Thereafter, at least prior to April 30, 1938, the gate was not used as a means of ingress or egress. The plaintiff commenced work in January, 1938, and had completed about ninety-five per centum of it by April thirtieth of that year.

The fair authorities announced that a preview would be held on Saturday, April thirtieth. The announcement was given wide publicity. It was stated that in addition to the formal ceremonies there would be a " Motorcade " during the afternoon and fireworks in the evening. As a result of the announcement, it is estimated that over 100,000 people attended. The lawns which plaintiff had seeded and landscaped were trampled upon and damaged. Because of rain which fell in the late afternoon and on the evening of April thirtieth, a second preview was held on Sunday, May eighth, and further damage was done.

The park department thereafter required plaintiff to do additional work in order to put the property in condition. He did so, under protest to the city authorities, at a cost of $3,322.77. It is not disputed that the figure represents a fair charge for the work done. In fact the park department subsequently reviewed and allowed plaintiff's claim in that amount. The comptroller's office approved the claim but later the city authorities rejected it. As a consequence this action was instituted.

Before stating all the facts which may be essential, it might be well to note briefly the causes of action upon which plaintiff has predicated his right to recover and also to point to the fact that the city seeks cross-relief against the New York World's Fair 1939 Incorporated, in the event that the city is held liable. There are four causes of action set forth in the complaint. The first three are against the city of New York, the first on the theory that the order to repair without compensation constituted a breach of contract; the second, that the repair work was an " extra " for which the city should be compelled to pay on the theory of

*quantum meruit.* The third cause of action is for interest due on the sum of $7,732.44 from the date of certification of final payment on the original contract. The fourth is against the defendant, New York World's Fair 1939 Incorporated, in tort for the cost of repairs, on the ground that the damage was occasioned by that defendant's negligence in failing to take adequate measures for the accommodation and restraint of the multitude of people whom it had invited to attend the previews.

The plaintiff having been apprised of the preview scheduled for April thirtieth, on the morning of that day he, together with a crew of his employees, barricaded the underpass of the crossover of the Long Island Railroad bridge for the purpose of preventing pedestrians from trespassing upon the lawns. This barricade consisted of a concrete reinforcing mesh, branches of trees and wire strung on stakes along the concrete roads of the parkway. On the afternoon of that day, plaintiff kept nine of his men on duty to assist in restraining the crowd from coming through the underpass and walking on the lawns. The efforts of his men, at first, were successful. Large crowds eventually accumulated. Some went so far as to enter the inclosure by climbing over the railroad tracks. Others walked in the lanes of the parkway. The New York city policemen, apparently mindful of the danger which might result, ordered the plaintiff and his men to remove the barricades and allow the crowds to pass. When the barricades were removed, not without protest, however, on the part of plaintiff, the crowds swarmed through and onto the lawns.

The gate to which reference has been made was thrown open. There is no proof in the record as to the identity of the person who was responsible for either the opening or the removal of the padlock. Plaintiff offered testimony, however, to the effect that the police were stationed both inside and outside of the grounds to restrain the crowds from passing to and fro, and in addition thereto, his proof indicated that during the late afternoon when, because of the rain, the crowd dispersed and the police were relieved, his employees closed the gate and wired it. Later, however, they were compelled by the police to reopen it. Concededly much damage was done to the lawns and shrubbery planted by the plaintiff because of the actions of the police and the conduct of the crowds.

Because of the rain, the fair authorities decided to have a second preview on Sunday, May eighth, and so announced. To avoid further damage, plaintiff wrote a letter dated May 4, 1938, to the department of parks advising it to keep pedestrians and motor vehicles off the strips of lawn paralleling the parkway. He also wrote a similar letter to the New York World's Fair 1939 Incorpo-

rated. Despite these warnings, the damage done during the day of the second preview was even more severe. The police not only directed the pedestrians to use the lawns but directed motorists to run their cars over a six-inch concrete curbing and park them upon the lawns.

Other damage was done by the police of the city of New York. Plaintiff's proof is to the effect that from April thirtieth, until possibly May seventeenth, the police used the center island of the parkway to parade to their separate posts. In addition, they ran motorcycles and police cars over the same area. On May tenth plaintiff forwarded a written complaint to the police commissioner of the city of New York, which, although acknowledged, was not heeded.

The city of New York, on this appeal, has abandoned its claim of sovereign immunity which it advanced at the Trial Term. It cannot, therefore, succeed on the facts. It was not the obligation of the plaintiff to determine at his peril whether the repair or " extra " work was covered by the provisions of the written contract. When the park department ordered the work to be done and plaintiff completed it under protest, he was entitled to treat the city's action as a breach of contract. This rule was definitely established in *Borough Construction Company* v. *City of New York* (200 N. Y. 149). There Judge HISCOCK said in part: " I regard it as settled that  *  *  *  within certain limits a contractor who is ordered by the proper representatives of the municipality to furnish materials or do work as covered by his contract which the former thinks are not called for by such contract may under protest do as directed and subsequently recover damages because he has been so required even though it should turn out that the contractor was right and that the official had no right to call on him to furnish such materials and do such labor. Decisions of this court have so conclusively established the principle that under such circumstances the contractor may treat the conduct of the municipality acting through its representative as a breach of contract and recover damages, that it is only necessary to summarize these without argument." The cases referred to in the opinion, as written, support the conclusion which we have reached, and it may be noted that the quoted language was approved verbatim in *Collins* v. *State of New York* (259 N. Y. 200, 205).

The rule enunciated in this line of cases is applicable in the instant case. Plaintiff not only did all in his power to prevent the damage to the lawns and shrubbery, but protested vigorously against the actions of the police. Further, he notified both the park department and the fair authorities to take proper precautions

on the day of the second preview. Yet all this was of no avail. Nevertheless, he was compelled to make repairs and comply strictly with what the park department considered to be a proper construction of the provisions of the contract. Plaintiff was not required, at the risk of being declared in default, to refuse to perform the work. It was problematical at the time whether the work was or was not covered by the contract. He made due protest. Our opinion is that he acted reasonably under the circumstances and is entitled to recover the amount which he expended.

We cannot accede to the argument of plaintiff and of the city that the World's Fair is responsible legally for the trespasses of the crowds and must answer for the cost of repairing the damage. There is not an iota of evidence in the record that any employee of the fair opened the gate which had been padlocked. Furthermore, the fair authorities were not obligated under the express terms of its agreement with the city to police the territory outside of the limits of its leasehold. The mere fact that they might have expected large crowds of people to congregate for the purpose of taking advantage of the previews was not, in and of itself, sufficient to make the World's Fair responsible from a legal standpoint. As we read the record, the damage in the main resulted because of the conduct of the New York city police. In the first instance, the members of that department were met with an emergency and it may well be that their action, under the circumstances, was necessary in order to avoid injury to the people who had congregated. What was done subsequently in the use of the center island by the members of the department and the directing of motorists to park on the lawns hardly can be classified as necessary. It seems to us, therefore, that the responsibility must rest solely upon the defendant City of New York.

We pass now to the plaintiff's third cause of action. It is for interest on the amount due. On February 27, 1939, plaintiff made a demand upon the city comptroller and treasurer for the unconditional payment of $7,732.44, which had been certified. In the written notice which was sent, plaintiff included the statement that the demand was made so as to start the running of interest. Plaintiff received a check for the amount from the city treasurer. However, because of a release clause which was contained in his contract with the city, he was prevented from cashing the check. It will be remembered that, at the time, the present litigation was pending.

As the case was about to be reached for trial, the city made a motion to interplead the World's Fair and assert a cross-claim against it, to which reference heretofore has been made. Plaintiff

opposed this motion. The city eventually obtained his consent upon condition that he would be permitted to cash the check which still was in his possession. An order was entered which provided as follows: " Ordered, that in consideration of the plaintiff's consent to the granting of this motion in the manner hereinabove indicated, the plaintiff may, without prejudice to any claim litigated by him in this action, collect and keep the proceeds of a certain check or warrant of the City of New York, bearing #36116 in the amount of $7,732.44, heretofore delivered to the plaintiff by the said defendant City and representing the final payment upon the contract in suit herein, and the defendant City hereby agrees to direct its depository to pay the same; but the defendant City specifically reserves the right to assert that any act or acts on the part of the plaintiff, except the cashing and collecting the proceeds of the check as hereinabove consented to, may nevertheless constitute a bar to the maintenance of this action against it."

Under the circumstances, it would be inequitable and unconscionable to sustain the city's contention that the acceptance of the check is a bar to the present action and that interest did not accrue.

The judgment, in so far as appealed from, should be modified by directing judgment in favor of the plaintiff against the City of New York for the relief demanded in the first two causes of action, to wit, for $3,322.77, with interest, and for interest upon the amount demanded in the third cause of action, and as so modified affirmed.

MARTIN, P. J., UNTERMYER and COHN, JJ., concur; CALLAHAN, J., dissents.

Judgment, in so far as appealed from, modified by directing judgment in favor of the plaintiff against the City of New York for the relief demanded in the first two causes of action, to wit, for $3,322.77, with interest, and for interest upon the amount demanded in the third cause of action, and as so modified affirmed. Settle order on notice,