WILLIAM L. COLLINS, Appellant, *v.* THE STATE OF NEW YORK, Respondent. (Claim No. 18655.)

(Argued May 10, 1932; decided June 1, 1932.)

*Charles B. Sullivan* for appellant. The Court of Claims erred in dismissing the claim upon the ground that claimant failed to prove the execution of a supplemental agreement for the work which he was required to do in removing the old center pier and constructing a new pier. The claim was not for extra work *ex contractu* but for damages as upon a breach of contract. (*Borough Const. Co. v. City of New York*, 200 N. Y. 149; *Uvalde Asphalt Paving Co. v. City of New York*, 154 App. Div. 112; 211 N. Y. 560; *Mulholland* v. *Mayor*, 113 N. Y. 631; *Gearty* v. *Mayor*, 171 N. Y. 61; *Anderson* v. *State*, 103 Misc. Rep. 388.)

*John J. Bennett, Jr., Attorney-General* (*Harold P. Burke* and *Edward E. Tanner* of counsel), for respondent. In the absence of a supplemental contract claimant cannot recover. (*Stanton* v. *State*, 103 Misc. Rep. 221; 187 App. Div. 963; *Paddleford* v. *State*, 103 Misc. Rep. 398; 192 App. Div. 870.)

CRANE, J. On June 19, 1927, William L. Collins entered into a contract with the State of New York, through the State Department of Public Works, Bureau of Highways, for the repair of Livonia-Ontario county line highway in Livingston county, known as Reconstruction Contract No. 1582. The road was a little

over five miles in length and was to be reconstructed with a concrete pavement.

The contract provided that claimant was to perform certain work on a large bridge designated as No. 3, in the village of Hemlock, which work consisted in removing the old truss, refacing the old abutments, the construction of new wings, the recapping of the old center pier, with a small extension on the west end, and the construction of a new floor slab with parapets.

Old bridge No. 3, which spanned the outlet of Hemlock lake, was a two-span iron truss bridge, about seventy feet in length, resting upon masonry abutments, and a center pier which stood in the outlet of the lake.

The center pier at ground level was about thirty-five feet in length, twelve feet in height and about nine feet in width at the base. It was an old masonry pier consisting of stones mortared up. Some sections of the pier where it had previously been repaired consisted of concrete.

The plans and drawings made a part of the contract, and set forth in detail the work required to be performed to construct a reinforced concrete T beam bridge, with floor pavement, slab and parapet, in place of the existing iron truss bridge.

These plans set forth that the old center pier, when altered as provided thereby, was to remain in place, as a center support for the new bridge. The plans provided that claimant should cut down the elevation of the pier slightly by cutting off the top and recapping it, and extend the length of the pier upstream about five feet by adding a concrete extension on the end, and also provided for refacing the downstream end.

When the contractor reached the work on the bridge and pier, it was discovered that the interior of the old pier, instead of being solid and suitable to be used in the construction of the bridge, was composed of a fill of loose stone and unstable materials. Wilson Harger, bridge

engineer of District No. 4, New York State Department of Highways, testified that at the time of his investigation to ascertain the work to be done, the pier seemed to be solid and firm, and, in fact, seemed to be in better condition than either the north or south abutment. " We knocked off some of the outside plaster with hammers, and examined it with a short drill. We also got the history of the pier from the local people, and we came to the conclusion that the probabilities were that the pier could be utilized essentially as shown on the plan, although we admitted the possibility of some further modification."

Later, when the contractor had reached this part of the work, Harger made another inspection, and testified: "And the object of my inspection on that day was to examine this pier to determine whether it could be utilized as called for on the plans, or whether some modification would be necessary to ensure stability of the structure. The result of that inspection, after finding the masonry as described, was that I ordered the engineer — Mr. James Douglass — to have the pier entirely removed and an entire new pier constructed of exactly the same general dimensions in regard to batter, top, width and grade as shown for the pier extension on the original plan."

The Mr. Douglass referred to, testified, regarding the pier, as follows: " I found a fairly good outer crust on the top of the pier that was exposed. But the inner portion was composed of stone and very loose broken up mortar, and some dirt. * * * I found the same rotten condition of the inner core — the pier core."

Collins, the contractor, was, therefore, ordered through the bridge engineer, and his assistant civil engineer, to destroy the pier, a stone structure about thirty-five feet in length, twelve feet high and nine feet in width, built in the bed of a stream. This meant blasting with dynamite, the construction of an earth dyke, or cofferdam,

and the rebuilding, from a depth a little lower than the original, of a new pier.

Collins protested that this was no part of his contract; that the State was preventing the execution of the contract as made. That called for the use of the old pier by cutting off the top and recapping it and extending its length. The very structure which the plans and specifications required him to use in constructing the new bridge, to wit, the pier, was to be destroyed and taken away by the State, so that he, Collins, could not do the work unless he rebuilt that which the State was to supply. This in his opinion was a breach of the contract, and he protested. On the other hand, Harger, the bridge engineer of the district, acting in perfect good faith, considered this work merely a modification of the plans, coming within the provisions of section 4 of the contract which reads as follows: " 4. * * * The State, however, reserves the right to make such additions, deductions or changes as it deems necessary, making an allowance or deduction therefor at the prices named in the proposal for this work, and this contract shall in no way be invalidated thereby; and no claim shall be made by the Contractor for any loss of anticipated profits because of any such change, or by reason of any variation between the approximate quantities and the quantities of the work as done. It is further agreed that any extra work performed or extra material furnished shall be covered by a supplemental contract as provided in Chapter 30 of the Laws of 1909 and the amendments thereto, and that no claim will be made by the Contractor for any such items performed or furnished before such supplemental contract shall have been approved by the Comptroller of the State of New York and executed by the Commissioner of Highways as provided by Chapter 342 of the Laws of 1913 and amendments thereto."

The contractor did the work, finished it by December, 1927, and under protest, in March of 1928, received from

the State pay for this rebuilding of the pier at the prices named in the proposal for the work. The State engineers contended that the removal of the old pier was work which came under the excavation item of the contract, for which claimant was to be paid fifty cents per cubic yard, and that the construction of the new pier came under the item for second class concrete, for which claimant had a contract item price of $10.50 per cubic yard. In preparing the final estimate and making payment, the Highway Department and the Comptroller assumed that the work came within the contract provisions and under the items and prices for unclassified excavation and second class concrete, and allowed and paid claimant for the quantities of excavation and concrete under these two items.

The claim which the contractor has presented to the Court of Claims is for his damages sustained when " the State of New York, in breach and violation of the provisions of said contract, directed and compelled claimant over his protest to blast out, excavate and entirely remove said old center pier, and construct an entire new center pier in place thereof."

We are of the opinion that the rule laid down in *Borough Construction Co.* v. *City of New York* (200 N. Y. 149, 156) governs the facts of this case. We there said: " The underlying justice of the principle is that where a municipal representative having authority to speak for it and supposed to be familiar with such matters in apparent good faith and with a show of reason requires a contractor to do certain things as covered by his contract, the contractor although protesting against the requirement ought not to be compelled to refuse obedience and incur the hazard of becoming a defaulter on his contract even though it shall subsequently turn out that he was right and the municipal representative wrong in the dispute. The theory involves the idea that the requirement of the municipal representative finds some reasonable basis in

the contract and that the question whether his demand is proper or improper is one which may be the subject of some doubt and debate and in respect of which the contractor might prove to be mistaken if he should refuse to do what was required of him, and there is no justification for applying it where the municipal representative requires something which is so palpably and manifestly beyond the provisions of the contract that the contractor would not be confronted by any of the legal perils of an erroneous decision if he should refuse to obey."

The Attorney-General has taken the position that the destruction and rebuilding of the pier was so clearly without the terms of the contract that Collins was not justified in going on with the work without obtaining a supplemental contract, approved by the Comptroller, as provided in section 4, above quoted. This was not so apparent to Mr. Harger, whom everyone recognizes to be efficient and capable and to have acted in good faith. He probably knew as much, if not more, than most of the lawyers regarding the terms and conditions of these construction contracts. He was of the opinion that the destruction of the old pier was excavation work, and the building of the new pier was second class concrete construction, to be paid for at the prices named in the proposal for the work, as specified in section 4 of the contract. The State authorities have paid the contractor upon this basis, over his protest. Unless we question the motives of these State employees, we are justified in assuming that there was some reasonable basis in the contract for this position which they have taken. We agree with the Attorney-General that they were wrong in their interpretation, but we disagree with the courts below, which held that the contractor went ahead with the extra work at his peril, and cannot now recover from the State because he failed to obtain a supplemental contract. The claim was dismissed for this reason. Here was an honest dispute, in which the bridge engineer claimed this

extra work to be within the contract, while Collins insisted that this blasting and reconstruction work was not a modification within section 4, to be done at unit prices. In this we agree with the contractor and hold that there was a breach of contract by the State, which enables the contractor to recover his fair, reasonable compensation, by way of damages, for this additional work required of him. We find no evidence in the case of any attempt to evade the provisions of the law regarding extra work or changes called for by " contingencies," within subdivision 9 of section 130 of the Highway Law (Cons. Laws, ch. 25). This action is brought to recover damages for a breach of contract, and not for work recognized as extra work, or arising out of unforeseen contingencies. The dispute arose over the meaning of the contract — the contractor, over protest, adopted the construction placed upon it by the State engineers. In doing so, he did not lose his right to subsequently justify his position. The danger of resorting to an action for breach of contract, which in reality is an attempt to recover for extra work, was fully recognized in the *Borough Construction Company Case (supra)*. We there said that the action can only be maintained where it is quite apparent that there has been an honest dispute over the terms of a contract, with color of right upon both sides, and no attempt to avoid the provisions of the contract and of law regarding extra work.

For the reasons here stated, the judgments below must be reversed, and the case remitted to the Court of Claims for a rehearing, and the award of such damages as that court may, in its good judgment, find the claimant has suffered.

POUND, Ch. J., LEHMAN, KELLOGG and HUBBS, JJ., concur with CRANE, J.; O'BRIEN, J., dissents on the ground that the destruction and rebuilding of the pier was so clearly outside the terms of the contract the plaintiff was not justified in proceeding with the work without

obtaining a supplemental contract, approved by the Comptroller, as provided in section 4 of the contract (*Borough Construction Co.* v. *City of New York,* 200 N. Y. 149); CROUCH, J., not sitting.

Judgments reversed and new trial granted, with costs in all courts payable to the appellant.