ENGLAND, et al, Plaintiff, v. STATE, Defendant.

(246 N. W. 628.)

(File No. 7230.  Opinion filed February 6, 1933.)

*Martens & Goldsmith,* of Pierre, and *M. L. Parish,* of Murdo, for Plaintiffs.

*M. Q. Sharpe,* Attorney General, and *Benj. D. Mintener,* Assistant Attorney General, for the State.

WARREN, J.  The plaintiffs are contractors, and some time prior to May, 1929, examined certain plats, specifications, and plans relating to certain highway work specified in a notice to contractors to be performed on State Trunk Highway No. 63 near the Cheyenne River bridge.  The notice to contractors provides, among other things, for certain excavations, to wit: "110,067 C. Y. as Unclassified, 127,169 C. Y. Stas. Overhauling of Excavation, and, 144 C. Y. Structure Excavation."  Thereafter the plaintiffs became the successful bidders and entered into a contract with the defendant state the latter part of May of said year, in which it was agreed that they were to receive a certain stipulated price per cubic yard for common excavation and a certain price per cubic yard for shale or loose rock excavation, but the contract is silent as to the price for solid rock formation excavation.  The plaintiffs state that the cross-section of the blueprints show an area by lines and figures to consist of 96,303 cubic yards of common excavation and 10,387 cubic yards of shale or loose rock excavation.  The

complaint and the various exhibits are before us for the purpose of deciding whether or not the complaint states facts sufficient to constitute a cause of action, it having been demurred to upon that specific ground.

The complaint is quite specific in its charges and alleges in a chronological way the various steps by both parties before entering into the contract and the things that took place after the contract had been executed and while proceeding with their work. They allege that while performing the excavation large bodies of solid rock were encountered and that the plats, plans, specifications, and contract did not contemplate the encountering of such a substance; that on encountering solid rock, the engineers in charge for the state were notified of this fact and that an additional expense would be incurred in removing this class of excavation. The state engineers countered by contending that the plaintiffs must proceed with their work, that they were bound by the contract, and that they would be compelled to proceed without any additional compensation, and called the plaintiffs' attention to the fact that there were certain binding specifications for road and bridge work embodied in the contract which would make it imperative that they proceed with the work. The South Dakota Standard Specifications for Road and Bridge Work on State Trunk Highways urged by the defendant as controlling are section 15, par. 16; section 40; and section 42.

The controversy between the plaintiffs and defendant, the state, from the allegation as disclosed by the complaint, is in respect to the necessary excavations which had to be made to complete the contract. The plaintiffs seek to recover the reasonable value for this excavation of 87,560 cubic yards of common excavating at 18 cents per cubic yard, and 70 cents per cubic yard for 22,487 cubic yards of loose rock excavation, and also $2 per cubic yard for 2,390 cubic yards of solid rock excavation, increasing the amount of recovery to $36,281.70 instead of $26,984.08 as allowed and paid for by the defendant.

From the allegations in the complaint it is apparent that the plaintiffs obligated themselves to complete the project for 24 cents per cubic yard, regardless of the kind, character, or classification of such excavation, and that they have never appealed to, com-

plained of, or objected to proceeding with their contract at any time during its existence, to the state highway commission.

There are allegations to the effect that complaint was made to the district engineer and the state highway engineer, but it will be readily seen from an inspection of the complaint that the parties to the contract were not notified and that the engineers had no authority to modify the existing contract.

Section 40 of South Dakota Standard Specifications and a part of the contract provides as follows: " * * * Should any such corrections or modifications of the plans or specifications require a different quality or class of work than that upon which the unit prices in the proposal are based, or if the modifications or corrections are required in parts of the work partially completed and such modifications result in an increased cost to the contractor, a 'fair and equitable amount in settlement shall be agreed upon before the work is performed, in writing, between the contractor and the commission.' * * * "

It will thus be seen from the wording of the foregoing section that it is expressly provided that in the event of any correction or change where the work had been partially completed and where it would be necessary to modify and make changes which would be of any increased cost to the contractor that a "fair and equitable amount in settlement shall be agreed upon before the work is performed, in writing, between the contractor and the commission."

This provision is mandatory and was one of the elements in the contract between the parties, and had the plaintiffs so desired they could have availed themselves of the opportunity and obtained the benefits of that provision of the contract by submitting to the commission that a modification of the contract was necessary on account of the extra cost in completing the excavation which had been encountered after partially completing the contract.

The plaintiffs did not rescind promptly upon discovering the facts, and are therefore not now entitled to rescind, having failed to comply with the rules governing rescission contained in section 906 of the 1919 S. D. Revised Code.

In considering plaintiffs' right to recovery for additional or extra work, we are met with the provisions of the contract and section 42 of the specifications, which provides that the contractor

shall perform extra work for which there is no quantity and price included in the contract, and that when such extra work is deemed necessary and desirable, the extra work will be paid for at a unit price or lump sum to be agreed upon previously in writing between the contractor and commission, and in case the price or sum cannot be agreed upon by both parties, or if the method of payment is impracticable, the commission may order the contractor to do such work on a force account basis. In this case the complaint fails to show any agreement in writing which was contemplated by the parties to the contract. The plaintiffs are clearly foreclosed from asserting any right to extra work under the express provision of the specifications. The authority to perform such work must be given in the manner and in accordance with the terms of the contract, for it is expressly provided that the extra work to be done and the price for said work must be expressed and given in writing in order to bind the parties to the contract. See McQuillan on Municipal Corporations, § 1946, p. 4183; see, also, Wilson v. Salt Lake City, 52 Utah, 506, 174 P. 847.

The plaintiffs contend that they were misled by certain drawings and plans prepared by the engineer for the state highway department and which, according to the expressed stipulations, were not prepared as a guide to prospective bidders, but were mere esimates for the use of the state highway commission in comparing bids. Whatever the facts may be, the plaintiffs must have known what they were, being experienced contractors and having performed highway contracts under similar specifications. But regardless of this condition they could not have been misled and must have known that it was incumbent upon them to notify the highway commission, who was a party to the contract, before any change could be made and that it would be necessary that a contract be entered into in writing with said commission as contracting party in order that the additional compensation might be fixed.

The requirements to be observed by the parties are plain and unambiguous, specifically pointing out what must be done and that there must be an agreement in writing before the work is performed, this being the requirement, and by their failure to bring themselves within those expressed provisions they are now precluded from recovering for any additional work and in any other manner or form than is provided for by their contract.

Plaintiffs contend that it was not incumbent upon them to notify the state highway commission to bring about a modification of the contract; that they did all that was necessary when they notified the district engineer and the state engineer and that section 69 of the specifications relieved them of any other or further duty. They contend that section 69 of the specifications provides, in substance, that the engineer shall decide any and all questions which may arise as to the interpretation of the plans relating to the work, and the specifications and such decisions shall be final and conclusive, and that any doubt as to the meaning or any obscurity as to the work of the specifications will be explained by the engineer so as to give due effect to the contract. They further contend that this is a provision and an express delegation of authority given by the state highway commission to the engineer and binds the state highway commission. We are unable to share the views expressed by the plaintiffs and are unable to reconcile the plaintiffs' contention with what we have said relating to notice and entering into a contract in writing directly between the contractor and the commission.

It is plain to us that the specification and the terms of the contract are not susceptible to such a construction as advanced by the plaintiffs. To so hold would do violence to the terms contained in specification No. 40, which in part provides, " * * * shall be agreed upon before the work is performed, in writing, between the contractor and the commission. * * * "

The only authority for a change rested in the commission, and under the facts as stated in the complaint we must assume that the plaintiffs had knowledge of the provisions of the contract which they entered into and ratified by commencing the work, completing all of it and even accepting the amount tendered by the state in payment thereof.

The demurrer is sustained.

POLLEY, J., concurs.

CAMPBELL, P. J., concurs in result.

ROBERTS, J. (concurring specially). This is an original action in this court instituted under the provisions of sections 2109-2112, Rev. Code 1919, against the state to recover $9,296.82, which the plaintiffs allege is the remainder due them and unpaid

for the grading of three and seven-tenths miles of highway and the construction of drainage structures thereon.

The material facts as disclosed in the complaint are that a contract was made and entered into between the plaintiffs and the state highway commission; that the contract executed by the parties recites that notice to contractors, proposal, and the plans and specifications were made a part of the contract; that in the notice inviting proposals, an item, and the one in question of "110,067 cubic yards excavation (unclassified)," is specified; that the blueprints of the project indicate the approximate amounts of common and loose rock or gravel, but no solid rock excavation; that prior to this letting the state highway commission had been letting contracts on a unit-price basis under the classification of common, loose rock, and solid rock excavations with exception of certain projects in the Black Hills; that a standard form of specifications was adopted and used under the contract without any provision of change for unclassified excavations; that the plaintiffs relying upon the blueprints, plans, and specifications, which purport to specify the nature of the materials to be excavated, submitted their proposal for the unclassified excavation computed upon the general average of the cost of common and loose rock excavations; that the plaintiffs to complete the contract were required to remove 22,487 cubic yards of loose rock and 2,390 cubic yards of solid rock; that the highway resident engineer in charge of the project was notified that the plans and specifications did not show the true nature of the materials to be excavated; that the resident engineer and the state highway engineer arbitrarily refused to make any adjustment, revision of the contract, or any provision for extra work or different classification; that the plaintiffs and the state highway commission believed and assumed at the time the contract was entered into that there would be no solid rock encountered; and that without an actual fraudulent intent on the part of the highway commission the plaintiffs were misled to their prejudice, which in justice and equity require that a recovery be had upon a quantum meruit for the reasonable value of the services rendered.

The plaintiffs describe themselves as engaged in a general contracting and highway building business and allege that they had entered into numerous contracts with the state highway commission, but had had no experience in the construction of highways in the

locality of the project here involved and had made no previous investigation, boring, or testing in the locality of this project; that it had never been the custom or practice among contractors to determine the nature of materials to be excavated; that the state highway commission had adjusted the compensation according to the nature of the work after its completion. It was in the light of these experiences that the plaintiffs submitted their proposal which states that they personally inspected the actual location of the work and understood the conditions under which the work was to be performed and that they waived all right to plead any misunderstanding regarding the location of the work or the conditions peculiar to the same. A provision of the specifications made a part of the contract and included in the allegations of the complaint provides that the estimate of excavation to be done under the contract as shown on the plans accompanying the proposal is "approximate and is given only as the basis of calculation for comparing bids, and awarding the contract. The State does not assume any responsibility that the quantities given shall obtain in the construction, and reserves the right to increase or diminish the quantities shown or to omit any of them as it deems necessary." A demurrer was interposed by the defendant, and the question for decision is whether the complaint states a cause of action.

Whether the highway commission owes a duty to prospective bidders with approximate accuracy to state the amount of different classes of material, if it attempt to state at all of what the strata to be excavated consist, and whether a bidder might rely thereon to the exclusion of other considerations, we need not consider.

The contract contains this provision: "The contractor shall perform extra work, for which there is no quantity and price included in the contract, whenever, to complete fully the work as contemplated, it is deemed necessary or desirable, and such extra work shall be done in accordance with the specifications therefor, or in the best workmanlike manner as directed. This extra work will be paid for at a unit price or lump sum to be agreed upon previously in writing by the contractor and the commission, or where such a price or sum cannot be agreed upon by both parties, or where this method of payment is impracticable, the commission may order the contractor to do such work on a 'force account' basis."

If the plaintiffs were entitled to a separate classification of solid rock, no such unit was provided in the contract and no price was fixed; but there was no agreement entered into in writing as required by the contract and it does not appear from the pleadings that the highway commission ordered the excavation of solid rock upon a force account by reason of the failure of the parties to agree upon an amount to be paid for extra work.

The good faith of the members of the highway commission in furnishing the estimate is not questioned, and the alleged mistake, the plaintiffs concede, was unintentional and that the parties to the contract were ignorant of the existence of the solid rock; but plaintiffs contend, and the action is founded upon the theory, that they, with knowledge that under the law the contract could not be rescinded and damages recovered from the state, had no remedy other than to complete the project and bring an action for cancellation or rescission of the contract and to recover upon a quantum meruit.

The statute under which the contract was authorized (section 57, chap. 333, Laws of 1919), in part, reads as follows: "When it shall have been determined that the necessary funds have been made available for any highway improvement on the Trunk Highway System, and when the plans and specifications have been finally prepared by the Highway Commission, the work contemplated shall be advertised for bids in a manner determined by the Highway Commission and shall be let to the lowest competent and responsible bidder unless such bid shall be deemed to be unreasonable. Contracts for all road and bridge construction performed on the Trunk Highway System shall be between the state and the contractor and shall be approved by the Highway Commission, and payments from all funds made available therefor shall be made from time to time by the State Treasurer upon estimates approved by the Highway Engineer."

The plaintiffs are chargeable with knowledge of the provisions of this statute and are bound by its terms. A contract was entered into as the statute contemplates, and it is not contended that the mistake arises from the failure of the contract to express the actual agreement of the parties thereto. The pleadings would not justify a recovery on such basis. It is not sufficient to entitle plaintiffs to

recover by reason of such mistake and upon contract merely to show that a mutual mistake was made and that the plaintiffs relied upon it to their injury. It would be essential to establish in addition to the mutuality of mistake that the minds of the contracting parties met, that they agreed upon a certain thing which was to have been embodied in their contract, and that by mistake it was either fraudulently or inadvertently omitted or inadequately expressed. Ariss-Knapp Co. v. Sonoma County, 73 Cal. App. 262, 238 P. 752. But assuming that the plaintiffs have a right in a case in equity to apply for a rescission of the contract and for relief from performing its terms and that there may be a recovery on an implied contract against the state, I am of the opinion that the allegations are insufficient to warrant recovery. The alleged mistake as to the existence of solid rock and the difference in the requirements of the contract as understood by the plaintiffs and the interpretation of its provisions by the state became known to the plaintiffs during the progress of the work. They may then have been entitled to repudiate the contract. If effect is not given to what may be the intent and purpose of the contract to make provision for determining compensation for extra work by reason of all unforeseen difficulties, it does not follow that the plaintiffs could proceed with the excavation with full knowledge of the facts and recover upon quantum meruiut. This case is distinguishable from Long et al v. Inhabitants of Athol, 196 Mass. 497, 82 N. E. 665, 17 L. R. A. (N. S.) 96, which is relied upon by the plaintiffs. It there appears that contractors were induced to enter into a contract for public work by mutual mistake as to the amount to be done and that plaintiffs upon ascertaining the real facts refused to proceed further with their contract and instituted an action for the cancellation of the contract for mutual mistake and for recovery upon a quantum meruit for the work that had been performed. The plaintiffs did not proceed to a completion of the work, and the court held that in the absence of laches on their part they were entitled to recover.

If a party desires to rescind on the ground of mistake, he must, upon the discovery of the facts, promptly announce his purpose and adhere thereto. Section 906, Rev. Code 1919. Though a contractor may be entitled to a rescission of a contract on the ground of a mistake, by completing the contract with full knowl-

edge of the facts, he will be presumed to have waived the infirmity and elected to proceed under the contract. Nounnan v. Sutter Land Co., 81 Cal. 1, 22 P. 515, 6 L. R. A. 219; Glasgow and S. W. R. Co. v. Boyd (1915) A. C. (Eng.) 526; City of Boston v. McGovern (C. C. A. 1st) 292 F. 705; Winston v. City of Pittsfield, 221 Mass. 356, 108 N. E. 1038.

RUDOLPH, P. J., concurs in this opinion.