GRIFFIS, et al., Plaintiffs v. STATE, Defendant
(11 N. W.2d 138.)

(File No. 8401. Opinion filed October 6, 1943.)
ORIGINAL PROCEEDING

**Wilson & Blethen,** of Mankato, Minn., and **Lewis W. Bicknell,** of Webster, for Plaintiffs.

**George T. Mickelson,** Atty. Gen., and **Ray F. Drewry,** Asst. Atty. Gen., for Defendant.

ROBERTS, P.J. This is an original action in this court brought against the State to recover an amount alleged to be due plaintiffs for riprapping of embankment on U. S. Highway No. 12 in Day County. Plaintiffs sought recovery upon six items. The Attorney General moved to dismiss the complaint, and this court granted the motion as to the first four items and denied the motion as to the other items. Griffis v. State 68 S. D. 360, 2 N. W.2d 666. Plaintiffs pursuant to stipulation filed an amended complaint, and as to the third cause of action alleged therein the Attorney General has moved to dismiss on the grounds that this court is without jurisdiction to render judgment because the statute (SDC 33.0604) giving consent by the state to be sued on claims disallowed by the State Auditor does not authorize

the bringing on actions on claims for which there is no available appropriation, and that plaintiffs for a third cause of action fail to state a claim upon which relief may be granted.

The item in controversy is for "increased labor expense caused by state highway commission of South Dakota forcing stone to be used on this riprapping project of much larger size than specified in the contract and specifications," and is the third item referred to in the former opinion. Plaintiffs agreed to furnish materials and to perform all labor under a written contract awarded on bids received after public notice. They were to be paid a fixed price of $1.84 per cubic yard for approximately 2,620 cubic yards of riprap fill and 9,450 cubic yards of hand placed riprap. The contract provided that plaintiffs were to furnish materials and perform all labor in conformity with the terms of the contract, the notice to contractors, proposal, plans and the standard specifications for road and bridges, and such notice, proposal, plans and specifications were made a part of the agreement as fully and to the same effect as if the same had been set forth in full in the body of the contract. Under the caption Rip-Rap Fill, there appears the following instruction in the standard specifications: "44.2 Material. This stone shall weigh not less than one hundred and thirty (130) pounds per cubic foot and be of a kind that will not disintegrate under the action of water. From fifty (50) to sixty (60) per cent of the stone shall be 'Two-man stone' or larger and the remaining forty (40) to fifty (50) per cent shall be graded in size from 'two-man stone' to pieces weighing ten (10) pounds apiece." And under the caption Hand Placed Rip-Rap, reference to material is as follows: "45.2 Material. The stone for this work shall be sound and durable 'one-man' field stone, or rough hewn quarry stone, as nearly rectangular as possible, and sixty (60) per cent of which shall have a volume of not less than two-thirds (⅔) of a cubic foot."

Plaintiffs allege that they were required by the engineer in charge to use stones weighing from 700 to 1,000 pounds

"on the most of the 12,070 cubic yards of rip-rapping," which were larger than the stone specified in the contract; that a "two-man" stone weighs approximately 200 pounds and can be lifted onto a truck or other conveyance by two men; that it required power hoists and other expensive equipment to load the heavier stone onto trucks; and that the additional cost of furnishing the larger stones in place of the material specified in the contract was the sum of $3,300, the amount sued for. It is further alleged that "when plaintiffs were required by the representative of the defendant to furnish these stones of excessive size, the plaintiffs applied to the engineer in charge and, subsequently, to the Highway Engineer at Pierre, South Dakota, and, finally, in December, 1937, William C. Griffis, Sr., one of the plaintiffs, accompanied by his counsel, went to Pierre, South Dakota, and there conferred with the Highway Commission, asking relief either by permission to shut down the job during the winter months, or to be allowed to furnish and use stone of the contract size, or to be allowed additional compensation proportionate to the increased costs caused by the requirements of the engineer in charge of the job, and plaintiffs were then informed by the Highway Commission that the work must proceed and were told to go back and finish the job. The question of whether additional compensation might be allowed was not answered but the plaintiffs were informed that this would have consideration."

██ The inspector or engineer in charge had no authority to vary the terms of the contract or to issue instructions contrary to the plans and specifications. The contract so specifically stated. It too contained the usual stipulation providing that no extra work was to be performed by the contractor without a written order. Stipulations requiring a written order for any alterations or extra work are frequently inserted in contracts for public works and have been construed by this court to be binding on the parties and to prevent a recovery for extras by a contractor when there is no compliance with such provision. England v. State, 61 S. D. 132, 246 N. W. 628; Kansas City Bridge

Co. v. State, 61 S. D. 580, 250 N. W. 343. It is the settled law of this state that an action under the provisions of SDC 33.0604 cannot be maintained if there is no available appropriation to pay the claim for which recovery is sought. Sigwald v. State, 50 S. D. 37, 208 N. W. 162; Brams v. State, 63 S. D. 571, 262 N. W. 89; Barnsdall Ref. Corp. v. Welsh, 64 S. D. 647, 269 N. W. 853. Funds appropriated for highway construction and maintenance are not available for payment of damages for breach of contract. Griffis v. State, supra, and cases cited.

■ The statute under which the contract was authorized required that it be awarded after competitive bidding to the lowest competent and responsible bidder. § 57, Chap. 333, Laws 1919. Plaintiffs were bound to know that the Commission or the engineer in charge had no authority to bind the state by a new contract without complying with this statute, and that they were limited to the compensation provided in the contract. England v. State, supra; see also annotation: 135 A. L. R. 1265. It is conceded that the state has made payments for all work and materials in conformity to the provisions of the contract, and if the work in question was covered by the specifications there can be no recovery. If such work was beyond the requirements of the specifications and may be regarded as extra work, there can be no recovery because there was no compliance with the stipulations in the contract that all extras and alterations must be ordered in writing. Plaintiffs, however, have now predicated their claim on the theory that when a contractor is directed by the engineer in charge to do work as covered by the contract and the question whether the demand is embraced within the contract is debatable and its determination surrounded by doubt, he may under protest comply and thereafter recover the reasonable value of the work if his interpretation of the contract is correct.

Plaintiffs allege in their amended complaint that they acceded under protest to the demands of the representatives of the state to furnish the larger stones which, under their construction of the contract, were not required. There

is authority to the effect that a contractor may under protest comply with such a demand and recover the additional expense. In Collins v. State of New York, 259 N. Y. 200, 181 N. E. 357, a case was presented where there was a disagreement between the contractor and the engineer in charge over the meaning of the contract. The contractor was directed to destroy an old bridge pier and construct a new one as covered by the contract. The contractor did the work under protest and subsequently brought an action against the state. The court allowing a recovery held that the following rule laid down in Borough Const. Co. v. City of New York, 200 N. Y. 149, 93 N. E. 480, 483, 140 Am. St. Rep. 633, governed the facts of the case: "The underlying justice of the principle is that where a municipal representative having authority to speak for it and supposed to be familiar with such matters in apparent good faith and with a show of reason requires a contractor to do certain things as covered by his contract, the contractor, although protesting against the requirement, ought not to be compelled to refuse obedience and incur the hazard of becoming a defaulter on his contract even though it shall subsequently turn out that he was right and the municipal representative wrong in the dispute. The theory involves the idea that the requirement of the municipal representative finds some reasonable basis in the contract, and that the question whether his demand is proper or improper is one which may be the subject of some doubt and debate, and in respect of which the contractor might prove to be mistaken if he should refuse to do what was required of him, and there is no justification for applying it where the municipal representative requires something which is so palpably and manifestly beyond the provisions of the contract that the contractor would not be confronted by any of the legal perils of an erroneous decision if he should refuse to obey."

The rule enunciated by these authorities relates to facts showing a breach of contract, and the measure of damages is the difference between the reasonable value of the work as performed and the cost of the work as contemplated

by the contract. Collins v. State of New York, supra; Empire Foundation Corporation v. Town of Greece, Sup., 31 N. Y. S.2d 424. The rule seems to have been founded upon the desire of the New York Court of Appeals to obviate what appeared to the court to be an injustice of requiring the contractor to decide at his peril a debatable contention over the interpretation of his contract. See Todd Dry Dock Eng. & Repair Corp. v. City of New York, 2 Cir., 54 F.2d 490.

■ If it be conceded that the question herein as to whether the direction of the engineer in charge was justified by the contract and accompanying specifications is debatable and that the rule mentioned is pertinent to the facts alleged with respect to protest by the contractor and performance of the work, yet it does not follow that the plaintiffs have a right of action against the state. Chapter 333, Laws 1919, was a comprehensive statute providing the manner of establishing, constructing and maintaining public highways. Section 54 of this Act authorized the expenditure of moneys in the state highway fund "only in the laying out, marking, construction or reconstruction of public highways forming the Trunk Highway System" and "such sums as are required for the maintenance of the Highway Commission." This definite limitation has been · retained in the law without material change except that provision is made for the maintenance of the trunk highway system by the state. SDC 28.0212. In view of Section 9, Article XI, State Constitution, providing that "no indebtedness shall be incurred or money expended by the state, and no warrant shall be drawn upon the state treasurer except in pursuance of an appropriation for the specific purpose first made," this court in Sigwald v. State, supra, held that moneys appropriated by Section 54 were not available for the payment of damages for breach of contract caused by the Highway Commission; that the word "specific" in this Constitutional provision impelled such conclusion. True, the claim in the Sigwald case was for damages for prevention of performance and the claim in the instant case is for labor performed in excess of the requirements of the contract.

The question in either instance is whether there is an appropriation for payment of damages accruing from the breach of contract. The Sigwald case is here controlling.

For these reasons, the motion to dismiss is granted.

All the Judges concur.