DAVE GUSTAFSON & CO., Inc., Respondent v.
S. D. HIGHWAY COMMISSION, Appellant

(225 N.W. 2d 594)

(File No. 11291. Opinion filed February 6, 1975)
Order denying petition for rehearing March 31, 1975

May, Johnson & Burke, Harold C. Doyle, Sioux Falls, for plaintiff and respondent.

Carl W. Quist, Highway Asst. Atty. Gen., Gary F. Colwill, Sp. Asst. Atty. Gen., Pierre, for defendant and appellant.

WOLLMAN, Justice (on reassignment).

Plaintiff brought an action against defendant (the Commission) pursuant to provisions of SDCL 31-2-34 seeking declaratory relief. The case was submitted to the trial court on a written stipulation of facts.* The trial court entered judgment in favor of plaintiff in the amount of $9,580. We reverse.

Summarized, the stipulation of facts reveals that on or about April 11, 1969, plaintiff entered into a contract with the Commission to perform paving and other supporting work on project I 90—4(18) 185 in Jones County, South Dakota. The contract incorporated the South Dakota Department of Highways "Standard Specifications for Roads and Bridges, (1969 edition)." The contract provided that the west portion of the project be completed by October 15, 1969. The total project was to be completed by July 1, 1970.

---

* The trial court made and entered formal findings of fact and conclusions of law. SDCL 15-6-52(b) provides that where the parties enter into a stipulation of facts for consideration by the court, findings of fact and conclusions of law are waived. We have stated that in such cases findings are "superfluous." Asmussen v. Schmidt, 87 S.D. 53, 202 N.W.2d 857. See also State v. Western Surety Company, 26 S.D. 170, 128 N.W. 173; Cable Company v. Rathgeber, 21 S.D. 418, 113 N.W. 88; and Slettebak v. Slettebak, 48 S.D. 51, 201 N.W. 716.

On October 10, 1969, plaintiff submitted a letter to the Commission, the material parts of which read as follows:

"In order to work a normal sequence of operations and avoid moving back and forth and losing time, we feel we should stay on the West end of the Projects and work toward this point.

"We could possibly move ahead and do this one area, but it might leave something uncompleted farther to the West and then possibly none of the road would be open to traffic.

"The concrete paving has been placed, and unless we have an earlier than usual shutdown, we feel we can complete this by November 15th which is the completion date on the other projects.

"We therefore request that the October 15th completion date be waived and November 15th be made the completion date."

Under date of November 20, 1969, the Commission wrote plaintiff a letter stating that at its meeting on November 19, 1969, the Commission had deferred action on plaintiff's request to waive the October 15, 1969 completion date, and stating that plaintiff's request would be considered at a later date.

On June 22, 1970, plaintiff wrote the following letter to the Commission:

"I am writing this letter requesting that the Commission consider allowing an additional 35 weather working days for completion of this project. I feel this is justified even though some additional days have been allowed for several of the Construction Change Orders signed. On several, no days were allowed; engineer stating that additional time would be considered upon completion of the project.

"Primarily, this letter is to comply with specifications, stating that a request must be submitted before

the completion date; and I hope that by filing this request you will hold this open for review. I can meet with you and possibly the Commission to make a more detailed review of this project and others in the immediate vicinity."

In a letter to the Commission dated September 9, 1970, plaintiff referred to its letter of June 22, 1970, and stated in part that:

"In addition to the days added to this project by the considerable base course overrun, I feel that the days added by Construction Change Orders on the 190-4(17) 177, Jones County projects should be considered as the projects were quite interrelated and both our company's personnel and equipment and the state's personnel and equipment were working the two as one job. Consequently, the overrun on the first job resulted in a slow down in construction on the second. * * *"

In a letter to the Commission dated November 24, 1970, plaintiff again restated the request for additional working days to complete the project. The project itself had been completed by plaintiff on September 23, 1970.

At an official meeting held on November 24, 1970, the Commission purported to grant plaintiff 23 days additional time on the west end of the project, originally scheduled for completion on October 15, 1969, and purported to grant plaintiff 26 days additional time on that portion of the project that had been scheduled for completion on July 1, 1970.

On November 8, 1971, the Commission, whose membership had apparently changed, rejected plaintiff's requests for extensions of time on the project in question and assessed liquidated damages of $100 per day on the 23 days required to complete the west portion of the project and $280 per day for the 26 additional days required to complete the total project, for a total of $9,580 in liquidated damages. It was this amount that the trial court held plaintiff was entitled to be paid by the Commission.

The pertinent parts of Section 8.6 of the above described "Standard Specifications for Roads and Bridges, (1969 edition)" read as follows:

"If the Contractor finds it impossible for reasons beyond his control to complete the work within the contract time as specified or as extended in accordance with the provisions of this subsection, he may, at any time prior to the expiration of the contract time as extended, make a written request to the Commission for an extension of time setting forth therein the reasons which he believes will justify the granting of his request. The Contractor's plea that insufficient time was specified is not a valid reason for extension of time. If the Commission finds that the work was delayed because of conditions beyond the control and without the fault of the Contractor, they may extend the time for completion in such amount as the conditions justify. * * The extended time for completion shall then be in full force and effect the same as though it were the original time for completion. * * *"

The law regarding changes in highway contracts was stated by this court as follows:

"Constitutional and statutory provisions place limitations on the contracting power and authority of the State Highway Commission of which those who deal with it are charged with notice. Cuka v. State, 80 S.D. 232, 122 N.W.2d 83. One of the most obvious of these is that its contracts must be let upon competitive bidding. SDCL 1967 31-5-10. However, it is consistent with this requirement that such contracts contain a provision permitting modification thereof by the parties without necessity of readvertising when a change in the plans is found necessary. England v. State, 61 S.D. 132, 246 N.W. 628; Kansas City Bridge Co. v. State, 61 S.D. 580, 250 N.W. 343; Griffis v. State, 69 S.D. 439, 11 N.W.2d 138. *But changes in the contract can then be made only as authorized thereby.*" State Highway Commission v. J. H. Beckman Construction Co., 84 S.D. 337, 341, 171 N.W.2d 504, 506. (emphasis added)

The thrust of the Beckman case, supra, is that the provisions that permit a modification in a contract entered into with the State Highway Commission are conditions precedent that must exist before changes can be made in such contract. In the instant case, the conditions precedent were, first, the existence of reasons beyond the control of plaintiff which made it impossible to complete the work within the specified contract time and, second, a written request for an extension of time made prior to the expiration of the contract time setting forth therein the reasons plaintiff believed would justify the granting of the request, such reasons, of course, to be in support of plaintiff's contention that it would be impossible for reasons beyond its control to complete the work within the contract time.

In our opinion, plaintiff's requests for extensions did not satisfy the requirements of Section 8.6; the Commission was therefore without authority to grant the extensions.

Because of our holding that the Commission was without authority to grant the requests for extensions of time, we need not consider whether the Commission had waived the requirements of Section 8.6 or exceeded its constitutional authority in granting the extensions of time.

The judgment is reversed.

WINANS, J., and BIEGELMEIER, Retired Justice, concur.

DUNN, C. J., and ANDERST, Circuit Judge, dissent.

ANDERST, Circuit Judge, sitting for DOYLE, J., disqualified.

BIEGELMEIER, Retired Justice, who at the time of oral argument was a member of the court, sitting for COLER, J., who was not a member of the court at the time this case was orally argued and did not participate.

ANDERST, Circuit Judge (dissenting).

I dissent.

In Schmidt, Com. of Rev. v. Phillips & Sons, 86 S.D. 326, 195 N.W.2d 400, this court set some standards for review of administrative decisions:

> "We agree with the commissioner's argument that if the requirements set forth in SDCL 35-4-26 are exclusive and that if one meeting those requirements is automatically entitled to a Class B liquor wholesaler's license *as a matter of law*, then the statutory discretion granted to the commissioner of revenue in SDCL 35-4-31 is meaningless.
>
> "*   *   *   It is for the commissioner, not the circuit court nor this court, to draw such legitimate inferences and conclusions as may be supported by the record as a whole.   *   *   *   Because of his intimate knowledge of the day to day operations of the retail and wholesale liquor business within the state, the commissioner is better able than the trial court to note and evaluate nuances in the testimony and documentary evidence." (emphasis supplied) 86 S.D. at 334, 338-339, 195 N.W.2d at 404.

If we follow these standards as to review of administrative decisions, it is the Highway Commission that has the "intimate knowledge of the day to day operations" and the priorities of various projects in mind as it makes its decisions. Like the commissioner granting a liquor license, certain discretion must be left with the Highway Commission; if one meeting the statutory requirements is not entitled to a liquor license as a matter of law, then surely one applying for extension of time on a contract by letter does not meet or fail to meet the requirements "as a matter of law." The legislature never intended to divest the Highway Commission of all discretion in passing on an application for extension of time on a project.

Whether or not the plaintiff complied with the provisions of section 8.6 is a question of fact. We should not substitute our judgment for that of the Commission as to the weight of the evidence on questions of fact. There is substantial evidence to support the findings of the Highway Commission which passed on

this extension under the provisions of 8.6 and of the trial court that reviewed it.

Further, it is my opinion that the majority decision here is promoting a dangerous and insidious precedent. At an official meeting on November 24, 1970, the Commission made a final decision granting the plaintiff a 23-day extension on completion of the west portion of the project and a 26-day extension on completion of the total project which had been scheduled for completion July 1, 1970. In the meantime, there was a change of administration, and on November 8, 1971, almost one year later, a newly appointed Commission reviewed the final decision of its predecessor and reversed that decision. This type of action opens up a real political "can of worms" that the Administrative Procedures Act was set up to avoid. Upon each change of administration, a new Highway Commission (or any other state commission or agency) will be free to review and reverse all final decisions of its predecessors on some technical requirement as has been set up in this case. The business community deserves a more stable environment in which to deal with state government.

I am authorized to state that Chief Justice DUNN joins in this dissent.