NORTHERN IMPROVEMENT COMPANY, INC., a South Dakota Corporation, Plaintiff and Respondent,

v.

SOUTH DAKOTA STATE HIGHWAY COMMISSION, Consisting of Governor Richard F. Kneip, Manley Feinstein, R. C. Stenson, and W. O. Delzer, members of the said South Dakota Highway Commission, acting for and on behalf of the Department of Highways, State of South Dakota; Department of Highways, State of South Dakota; and, the State of South Dakota, Defendants and Appellants.

No. 11789.

Supreme Court of South Dakota.

Argued Nov. 15, 1976.

Decided June 15, 1978.

Rehearing Denied July 21, 1978.

Ronald G. Schmidt, of Schmidt & Schroyer, P. C., Pierre, for plaintiff and respondent.

Carl W. Quist, Asst. Atty. Gen., Pierre, for defendants and appellants.

DUNN, Chief Justice (on reassignment).

This action arises out of a highway construction contract entered into on August 15, 1968, between plaintiff, Northern Improvement Company, Inc., and defendant South Dakota State Highway Commission for the performance of certain dirt, grading, gravel, and asphalt work on U.S. Highway No. 212 in Codington County, South Dakota.* Plaintiff's original complaint alleged that the contract plans and specifications were unfit and inadequate for the job, that defendant would not permit plaintiff to utilize other, more efficient methods, that defendant refused to correct the deficiencies but rather harassed plaintiff's employees and generally interfered with plaintiff's performance, and that all of these acts and omissions disrupted plaintiff's performance schedule and necessitated the expenditure of work and materials not contemplated by the parties at the time the contract was bid and executed. The original complaint additionally alleged that defendant failed to account fully for materials and work supplied by plaintiff under the provisions of the contract. The damages claimed by plaintiff were all in excess of and in addition to the agreed contract price. In *Northern Improvement Co., Inc. v. State Highway Comm.*, 87 S.D. 71, 202 N.W.2d 861, this court upheld the trial court's dismissal of plaintiff's original complaint as being one for damages for breach of contract and for extra work not within the terms of the contract. Omitted from defendant's motion and hence from that decision was that portion of the complaint which alleged that defendant had failed to account fully for plaintiff's performance under the terms of the contract.

In response to a motion for a more definite statement of its remaining claim, plaintiff filed its amended and second amended complaints, which set forth plaintiff's present claims in five counts. Plaintiff presently seeks damages in the sum of $343,535.92. Count I of the complaint, except paragraph 9 thereof, was subsequently dismissed pursuant to a settlement stipulation. Defendant's answer and amended answer generally deny plaintiff's allegations and raise the affirmative defenses of full payment, waiver, and res judicata.

Prior to trial, plaintiff and defendant filed a joint petition for declaratory judgment. For purposes of the joint petition, the parties mutually stipulated to the truth of the facts and conclusions of fact contained in plaintiff's amended and second amended complaints and in the joint petition. The pertinent facts as thus established are summarized as follows.

The contract proposal including plans, specifications, and special provisions was available to bidders and was obtained by plaintiff prior to its submitting a bid. The contract incorporated the South Dakota Department of Highways "Standard Specifications for Roads and Bridges, (1963 Edi-

* We will refer to the several defendants collectively as "the defendant."

tion)." It specified a "contract time" of 150 working days. Plaintiff's bid was accepted by the Commission and a contract was duly executed.

Throughout the course of construction, plaintiff was plagued by difficulties. The source of these difficulties, as specifically set forth in Count II of the amended complaint, was the defendant's project engineer, who refused to yield to plaintiff's demands for extra work orders and supplemental agreements to augment plans and specifications which were in certain instances defective and in others inadequate to permit plaintiff to cope profitably with unforeseen contingencies. Besides the mere refusal to issue the requested orders, the engineer aggravated various problems and created others by orally "ordering" plaintiff both to do defective work, which then had to be redone, and to perform various operations in a defective or highly inefficient and unprofitable manner.

The construction of the detour provides a typical example. Because of a deficiency of material existing at the detour site with which to form the road bed, the specified quantity of gravel placed upon the detour was inadequate to produce a stable roadway in the shoulder areas. To further complicate matters, the gravel derived from the specified sites contained insufficient binder clay to enable plaintiff to lay and compact it properly. Plaintiff immediately requested that the engineer allow it to add clay as a binder at no additional cost to the state. The engineer refused to order any deviation from the specifications, however. Plaintiff then advised the engineer that the instability of the detour would result in substantial additional maintenance costs for which it expected compensation. The engineer responded by ordering plaintiff to dig up the various soft spots and dry them out. Substantial maintenance problems did in fact arise continuously throughout the project because of the defective detour design, and these cost plaintiff valuable time in addition to the cost of the maintenance work itself. Plaintiff was required to assign an entire crew of men whose sole job was to maintain the detour and repair it as it broke up. Plaintiff performed the work as directed but under oral protest. Plaintiff also repeatedly requested written supplemental agreements and written orders, but these requests were consistently denied. On several occasions, plaintiff discussed the problem with the resident engineer, the district engineer, and department engineering personnel in Pierre. The engineers acknowledged that the detour was underdesigned. However, plaintiff never notified the engineer or the department in writing of its intention to claim additional compensation.

This pattern of events was similarly repeated in the numerous other troublesome instances of which plaintiff complains. The two subcontractors doing the earth moving were required to quit the job because the specifications and the engineer required too much water to be added to the soil. The resulting density problems cut the subcontractors' output below the level where their assistance was economically feasible. The gravel base course for the shoulders contained insufficient binder. After plaintiff was finally permitted to mix clay with the gravel, the engineer "ordered" it to lay out the shoulders with a stringline, causing additional delay. The specifications and the engineer set the AC 85–100 content of the asphalt so high that rolling and compaction problems occurred. The engineer forced plaintiff to make automatic turns on corners that were too sharp, delayed rolling for too long, unreasonably shut down the hot mix plant, and orally ordered the media drains to be skewed when the plans called for square end construction. In all of these instances, plaintiff orally requested supplemental agreements or change orders and performed the work under oral protest. However, no supplemental agreements or change orders were executed.

Four issues were presented to the trial court by the joint petition and stipulation. The trial court entered judgment in plaintiff's favor on three of those issues, from which defendant appeals. Plaintiff does not appeal. The three issues thus presented are: (1) whether plaintiff has rights and

claims against the state as a matter of law for work not originally contemplated or made necessary by alterations to the project plans and "ordered" or "required" to be done by the state's engineer although no written supplemental agreements or orders were executed nor written notification of intention to make claims for extra work given; (2) whether plaintiff may assert the doctrines of waiver and estoppel in pais to prevent the state from raising the lack of written supplemental agreements, written orders, or written notice of claims as conditions precedent to plaintiff's recovery; and (3) whether plaintiff has a claim against the state for providing defective and deficient project plans.

■ We note at the outset that plaintiff's third contention was previously raised by paragraph VI of its original complaint. Relying on *G. H. Lindekugel & Sons, Inc. v. State Highway Comm.*, 87 S.D. 32, 202 N.W.2d 125, we upheld the dismissal of plaintiff's claim for damages for defective project plans as being one for breach of contract and hence invalid. *Northern Improvement Co., Inc. v. State Highway Comm.*, supra. We adhere to that decision and hold that the trial court erred in concluding that the stipulated facts may support a claim for damages for defective project plans.

We next consider whether plaintiff may enforce a claim for compensation under the terms of the contract in the absence of a written supplemental agreement, a written order or written notice of intention to make claim for extra work. The resolution of this issue requires us to construe the contract, the pertinent provisions of which are found in the South Dakota Department of Highways "Standard Specifications for Roads and Bridges (1963 Edition)". Because certain provisions of the Standard Specifications are determinative of this appeal, we quote them as follows:

"1.9 CHANGE ORDER—*A written order* to the Contractor, signed by the Engineer, ordering a change in the work from that originally shown by the plans and specifications that has been found necessary.

*If the work is 'Extra Work' or of a nature involving an adjustment of contract unit price, a 'Supplemental Agreement' shall be executed.* A Change Order, duly signed and executed by the Contractor, constitutes a 'Supplemental Agreement' which is an authorized modification of the contract." (emphasis supplied)

"1.12 CONTRACT—The written agreement executed between the Department and the successful bidder, covering the performance of the work and/or the furnishing of labor and materials for the proposed construction, and by which the Department is obligated to compensate the successful bidder therefor at the mutually established and accepted rate or price. *The contract shall include* the proposal, contract form and contract bond, plans, specifications, supplemental specifications, all general or special provisions, notice to proceed, *also any approved change orders and supplemental agreements* that are required to complete the construction of the work in an acceptable manner, including authorized extensions thereof, all of which constitute one instrument." (emphasis supplied)

"1.26 EXTRA WORK—Additional construction items which are not included in the original contract."

"1.27 EXTRA WORK ORDER—*A special form of change order* concerning the performance of work or furnishing of materials involving extra work. Such extra work may be performed at agreed prices *or on a force account basis as provided elsewhere in these specifications.*" (emphasis supplied)

"1.70 SUPPLEMENTAL AGREEMENT—*A written agreement executed by the Engineer and Contractor* covering any alterations and unforeseen work necessary to the project. Such supplemental agreement becomes a part of the contract when approved and properly executed." (emphasis supplied)

"1.79 WORK ORDER—*A written order, signed by the Engineer, of a contractural status* requiring performance by the Con-

tractor without negotiation of any sort." (emphasis supplied)

"4.1 INTENT OF CONTRACT— * * * The Contractor shall perform all work, in accordance with the lines, grades, typical cross sections, dimensions, and other data shown on the plans *or as modified by written orders* * * *." (emphasis supplied)

"4.3 INCREASED OR DECREASED QUANTITIES AND ALTERATION OF PLANS OR OF CHARACTER OF WORK—The Engineer shall have the right to make alterations in plans or character of work as may be considered necessary or desirable during the progress of the work to complete satisfactorily the proposed construction. Such alterations shall not be considered as a waiver of any conditions of the contract nor invalidate any of the provisions thereof.

\* \* \* \* \* \*

"Whenever an alteration in the character of work involves a substantial change in the nature of the design or in the type of construction which materially increases or decreases the cost of performance, the work shall be performed in accordance with the specifications and as directed, *provided, however, that before such work is started a supplemental agreement, acceptable to both parties to the contract, shall be executed.*

"In all other cases the work involved in the changes shall be performed on the basis of the contract unit prices." (emphasis supplied)

"4.4 EXTRA WORK—Work not originally contemplated, or work made necessary by minor alterations of the plans, which is deemed necessary or desirable in order to complete fully the work as contemplated, and for which no provision or compensation is provided in the proposal or contract, shall be deemed extra work, and shall be performed by the Contractor in accordance with the specifications and as directed by the Engineer; *provided, however, that before any extra work is started a supplemental agreement shall be entered into, or an extra work order is-*sued. Where the terms of a supplemental agreement cannot be agreed upon by both parties, or where this method of payment is impractical, *the Engineer may order the Contractor to do such work on a force account basis (See Section 9.5). Claims for extra work which have not been agreed to beforehand in writing will be rejected.*" (emphasis supplied)

"5.1 AUTHORITY OF THE ENGINEER—All work shall be done under the supervision of the Engineer and performed to his satisfaction. He shall decide all questions which may arise as to the quality and acceptability of materials furnished, work performed, manner of performance, rate of progress, interpretation of the plans and specifications, all questions as to the acceptable fulfillment of the contract on the part of the Contractor, all disputes and mutual rights between Contractors. The Engineer shall determine the amount and quality of the several kinds of work performed. His decision shall be final and *he shall have the authority to require the Contractor to carry out all orders promptly.*" (emphasis supplied)

"5.14 CLAIMS FOR ADJUSTMENT AND DISPUTES—In any case *where the Contractor deems* that extra compensation is due him for work or material not clearly covered in the contract or not ordered by the Engineer as an extra, as defined herein, *the Contractor shall notify* the Engineer *in writing* of his intention to make claim for such extra compensation *before* he begins work on which he bases the claim. *If such notification is not given, and the Engineer is not afforded proper facilities by the Contractor for keeping strict account of actual cost as defined for force account then the Contractor hereby agrees to waive the claim for such extra compensation.* Such notice by the Contractor, and the fact that the Engineer has kept account of the cost as aforesaid, shall not in any way be construed as proving the validity of the claim. In case the claim, after consideration by the Engineer, is found to be just, it shall be allowed and paid as an extra as

provided herein for force account work. Nothing in this Section shall be construed as establishing any claim contrary to the terms of Section 4.3." (emphasis supplied)

"9.5 EXTRA AND FORCE ACCOUNT WORK—Extra work performed in accordance with the requirements and provisions of Section 4.4 will be paid for at the unit prices or lump sum stipulated in the supplemental agreement, *or in lieu of such agreement, the Department may require the Contractor to do such work on a force account basis * * *.*" (emphasis supplied)

Plaintiff argues that the clauses of Sections 4.4 and 9.5 which provide that, in the absence of the execution of a supplemental agreement, "the Engineer may order the Contractor to do such work on a force account basis" and "the Department may require the Contractor to do such work on a force account basis," when read in conjunction with the Engineer's authority under Section 5.1 "to require the Contractor to carry out all orders promptly," authorize the engineer to orally "order" extra work to be done on a force account basis. Plaintiff argues that its claims are thus enforceable within the terms of the contract.

A contract must be considered in its entirety to determine the meaning of any of its parts. *Eberle v. McKeown,* 83 S.D. 345, 159 N.W.2d 391; *Piechowski v. Case,* S.D., 255 N.W.2d 72. By its terms, the contract at issue incorporated any approved change orders and supplemental agreements, both of which were required to be in writing. Section 4.1 requires the contractor to perform in accordance with the plans or written modifications thereof. Standing alone, the sentence of Section 4.4 relied on by plaintiff does not specifically require the "order" of the Engineer to be in writing. However, plaintiff ignores the proviso in the preceding sentence of the same section which unequivocally states "that before any extra work is started a supplemental agreement shall be entered into, or an extra work order issued." Furthermore, "work order" is defined as a written order of a contractual status and "extra work order" as a special form of change order. "Standard Specifications," Sections 1.79 and 1.27.

Read in its entirety, the contract compels the conclusion that there are but three methods by which a contractor may preserve a claim for extra compensation. Where the parties agree that a given piece of work is outside the terms of the contract and agree to the essential terms of a modification, a written supplemental agreement is executed. Should the contractor refuse to sign a supplemental agreement, the engineer can issue an extra work order, in which case the parties must keep force account records of actual cost pursuant to Section 9.5. Conversely, where the contractor deems that a piece of work to be done is outside the terms of the contract, and the engineer nevertheless refuses to issue an extra work order, the contractor may submit a written claim for extra compensation pursuant to "Standard Specifications," Section 5.14.

The law regarding changes in highway contracts was stated by this court as follows:

"Constitutional and statutory provisions place limitations on the contracting power and authority of the State Highway Commission of which those who deal with it are charged with notice. *Cuka v. State,* 80 S.D. 232, 122 N.W.2d 83. One of the most obvious of these is that its contracts must be let upon competitive bidding. SDCL 1967 31–5–10. However, it is consistent with this requirement that such contracts contain a provision permitting modification thereof by the parties without necessity of readvertising when a change in the plans is found necessary. *England v. State,* 61 S.D. 132, 246 N.W. 628; *Kansas City Bridge Co. v. State,* 61 S.D. 580, 250 N.W. 343; *Griffis v. State,* 69 S.D. 439, 11 N.W.2d 138. *But changes in the contract can then be made only as authorized thereby.*" *State Highway Commission v. J. H. Beckman Construction Co.,* 84 S.D. 337, 341, 171 N.W.2d 504, 506. (emphasis added)

As we have construed the contract at issue, either a written supplemental agreement, a written extra work order, or a written notice of intention to make claim for extra compensation was required to effect a modification of the contract. None of these three means was employed in this case; therefore, absent a waiver by defendant of the requirement that claims for extra work be in writing, the plaintiff has no claim under the contract for extra compensation for extra work done. *Dave Gustafson & Co. v. State Highway Commission,* S.D., 225 N.W.2d 594.

■ The final issue presented is whether, under the stipulated facts, defendant may be held to have waived these provisions or to be estopped from raising the existence of a written order, agreement, or claim as a condition precedent to the formation of an enforceable modification of the contract. We conclude that the stipulated facts are sufficient to estop the defendant from raising the existence of a written order as a condition precedent. Section 5.1 of the Standard Specifications grants the highway engineer broad supervisory authority and makes his decisions final. Section 4.4 makes it clear that disputes over extra work are to be worked out between the contractor and the engineer. This broad authority given the engineer, when combined with the fact that the contractor discussed the problems with the resident engineer, the district engineer, and department engineering personnel in Pierre, is sufficient to estop the defendant from raising the lack of a written agreement as a defense. *United States v. L.P. & J.A. Smith,* 256 U.S. 11, 41 S.Ct. 413, 65 L.Ed. 808; *Lindbrook Construction, Inc. v. Mukilteo School District,* 76 Wash.2d 539, 458 P.2d 1; *J. H. Jenkins Contractor, Inc. v. City of Denham Springs,* La.App., 216 So.2d 549; *Home Owners Construction Co., Inc. v. Borough of Glen Rock,* 34 N.J. 305, 169 A.2d 129; *Travis-Williamson County Water Control and Improvement District No. 1 v. Page,* Tex.Civ.App., 358 S.W.2d 158.

The rulings of this court in earlier cases such as *Griffis v. State,* 69 S.D. 439, 11 N.W.2d 138, and *England v. State,* 61 S.D. 132, 246 N.W. 628, that the highway engineer's conduct cannot serve as the basis for an estoppel of the Highway Commission are distinguishable by the fact that they were made under different specifications which limited the authority of the engineer to a much greater extent than do the current ones. In *England,* supra, extra work was to be "agreed upon before the work is performed, in writing, *between the contractor and the commission."* In *Griffis,* the court points out that the engineer in charge had no authority to vary the terms of the contract or issue instructions contrary to the plans and specifications. The engineer in this case had the power to approve extra work and vary the plans and specifications.

Although the contractor should be held to know the contents of the contract, the engineer should be equally liable for that knowledge. The defendant has chosen to give the engineer broad authority over projects and cannot now contend that the actions of the engineer are insufficient to estop it.

For the reasons given herein, we reverse the lower court's determination of the third issue, and, as to the first two issues, we hold that the plaintiff has rights and claims against the defendant by reason of the application of the doctrines of estoppel in pais and waiver.

ZASTROW and MORGAN, JJ., concur.

WOLLMAN and PORTER, JJ., concur in part and dissent in part.

WOLLMAN, Justice (concurring in part, dissenting in part).

I agree that plaintiff has no claim under the contract for extra compensation for extra work done. I would hold, however, that the concepts of waiver and estoppel are not available to circumvent the terms of the contract. In the case of *England v. State,* 61 S.D. 132, 246 N.W. 628, plaintiff argued that its complaint to the district and state highway engineers that certain work was outside the scope of the contract was sufficient to avoid a requirement that a settle-

ment for such work be agreed upon in writing between the contractor and the commission prior to the commencement of the work. In spite of plaintiff's allegation that it had been misled by certain "specifications" proposed by the engineer, the court dismissed plaintiff's complaint for failure to state a claim. In *Kansas City Bridge Co. v. State,* 61 S.D. 580, 250 N.W. 343, this court held that acts of the state highway engineer could not form the basis of an alleged waiver of a requirement of a written modification agreement between the commission and the contractor. See also *Griffis v. State,* 69 S.D. 439, 11 N.W.2d 138; *Alexander v. State,* 74 S.D. 593, 57 N.W.2d 121. I perceive no compelling reason to depart from the rule of strict adherence to the terms of a public contract that we have laid down in these cases. Those who contract with the state are charged with notice of the strict limitations on the part of the state to enter into highway construction contracts. *State Highway Commission v. J. H. Beckman Construction Co.,* 84 S.D. 337, 171 N.W.2d 504. Plaintiff could have preserved its right to claim additional compensation by complying with the provisions of the contract. That it may have had to suffer an intransigent project engineer did not excuse it from seeking modifications in accordance with the terms of the contract. I fear that the holding in this case may lead to numerous claims for additional compensation in contravention of the specific provisions of highway construction contracts. We are, after all, writing law that does not affect the average citizen's contractual relationship with an impersonal bureaucracy but rather is of significance to a group of highly sophisticated entrepreneurs who voluntarily choose to enter into these highly detailed, strictly construed contracts with the state. Cf. *State Department of Social Services v. Rodvik,* S.D., 264 N.W.2d 898.

I would reverse that portion of the judgment appealed from.

PORTER, Justice (concurring in part, dissenting in part).

Section 5.14 afforded plaintiff a method whereby it could assert a claim under the contract for the extra work done and extra material furnished. Refusal of the engineer to furnish a written change order (sec. 1.9), a written extra work order (sec. 1.27), a written supplemental agreement (sec. 1.70) or a written work order (sec. 1.79) did not prevent plaintiff from timely submitting a written claim for extra work and material under section 5.14. The claim procedure which the contractor may utilize under 5.14 is clearly designed to meet a situation, as here, where the engineer refuses or neglects to order or agree in writing to extra work by the contractor. I see no evidence or contention here that defendants or the engineer prevented plaintiff from filing a timely 5.14 claim or induced plaintiff not to do so.

There is, accordingly, no basis here for applying the doctrine of estoppel or waiver against defendants. Whether either doctrine can ever apply against the state under a highway construction contract we need not decide today. It is enough that the stipulated facts before us reveal that plaintiff unilaterally elected not to comply with the 5.14 contract claim provision specifically designed for a contractor claim of this nature. There is therefore no factual basis to apply estoppel or waiver against the defendants in the case at bar, and I would therefore reverse that portion of the judgment from which defendants appeal.